[Crim. No. 24619. July 24, 1986.]

In re JOEL HEAD et al. on Habeas Corpus.

**COUNSEL**

Donald Specter and Margaret Littlefield for Petitioners.

John H. Hagar, Jr., and Paul Hoffman as Amici Curiae on behalf of Petitioners.

John K. Van de Kamp, Attorney General, Karl S. Mayer, Assistant Attorney General, Kenneth C. Young, Elizabeth Edwards, Paul Gifford, Catherine A. Rivlin and Thomas P. Dove, Deputy Attorneys General, for Respondent.

**OPINION**

**GRODIN, J.**—Three prison inmates represented by the Prison Law Office[1] challenged the procedures under which the Department of Corrections implemented the work furlough program authorized by Penal Code sections 6260-6265. After consolidating the petitions the superior court found the procedures to be constitutionally inadequate. That court ordered individualized consideration of inmates to determine eligibility for participation in the program under procedures that would afford due process. The ruling was affirmed on appeal (*In re Head* (1983) 147 Cal.App.3d 1125 [195 Cal.Rptr. 593]) after which the Prison Law Office requested, and pursuant to Code of Civil Procedure section 1021.5 (section 1021.5 hereafter),[2] the superior court awarded attorney fees of $3,350.

---

[1]The Prison Law Office is a privately supported group of attorneys who provide direct legal services at no cost to prison inmates. Supported in major part by a charitable foundation, the attorneys of the Prison Law Office have represented over 5,000 prisoners since the office was founded in 1976.

[2]Section 1021.5: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

On appeal by respondent Director of Corrections, the Court of Appeal reversed the order awarding attorney fees. ■ The court held that section 1021.5 applies only to civil cases, and that because habeas corpus is a special proceeding of a criminal nature and not a civil action, an award of attorney fees to the Prison Law Office for its services in representing the petitioners in this case was not authorized by that section. We granted the petition of the Prison Law Office for review of that decision. (Cal. Rules of Court, rule 28(a)(2).)[3]

We shall conclude that the nature of the relief sought, not the label or procedural device by which the action is brought, is determinative of the right to seek fees under section 1021.5. The petitions here presented issues related to the conditions of confinement in a state prison and involved the rights of prison inmates generally. Vindication of these rights is not analogous to a defense against a criminal prosecution. Rather, as respondent concedes, the petitioners' claim is of such a nature that it might have been presented in a purely civil proceeding—by petition for writ of mandate or action for declaratory relief—in which case no question would be raised as to the propriety of the award.[4] That petitioners elected to utilize the more expeditious, simplified and less expensive procedure of habeas corpus to vindicate their rights, should not affect the availability of a fee award. We therefore hold that the award of attorney fees in this case was proper under section 1021.5, and reverse the decision of the Court of Appeal.

I

Section 1021.5 was added to the Code of Civil Procedure in 1977. (Stats. 1977, ch. 1197, § 1, p. 3979.) The statute is a legislative codification of the doctrine under which courts had exercised their inherent power to award attorney fees under the "private attorney general" rationale. ■ "As we

---

[3]Because we review the decision of the Court of Appeal, and do not transfer the appeal itself to this court as was the practice prior to the implementation of the 1984 amendment to article VI, section 12, subdivision (b), of the California Constitution on May 6, 1985, we do not address the argument made in this court by the Prison Law Office that counsel should be appointed, and if necessary paid, pursuant to Penal Code section 987.2 whenever an order to show cause issues in a habeas corpus petition. That issue was not presented by the action of the superior court in this case and was not addressed by the Court of Appeal in its opinion.

Similarly, although respondent argued below that the nature of the relief granted petitioners was not comparable in context or content to that contemplated by section 1021.5 as a justification for an award of attorney fees, that issue was not raised in respondent's answer to the petition for review and is not before the court in this proceeding. (Cal. Rules of Court, rule 28(e)(5).)

[4]In light of our conclusion that it is the nature of the relief sought, not the type of proceeding in which the claim is made, that is determinative of the right to fees under section 1021.5, we need not involve ourselves in the parties' efforts to characterize habeas corpus proceedings as either criminal (respondent) or civil (petitioner).

explained in *Serrano III* [*Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]], the fundamental objective of the private attorney general doctrine of attorney fees is ' "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." ' (20 Cal.3d at p. 43 (quoting *D'Amico* v. *Board of Medical Examiners* [(1974)] 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10]).) The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

Since the enactment of section 1021.5, which created the right to attorney fees for actions vindicating statutory rights as well as the constitutional rights at issue in *Serrano III,* this court and the Court of Appeal have approved its application in a variety of contexts. (E.g., *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704] [the right of free expression and petition guaranteed by Cal. Const.]; *Serrano* v. *Unruh* (1982) 32 Cal.3d 621 [186 Cal.Rptr. 754, 652 P.2d 985], [the right under § 1021.5 itself to an attorney fee award]; *Woodland Hills, supra,* 23 Cal.3d 917 [the right under the Subdivision Map Act (Gov. Code, §§ 66473.5, 66474.60) to specific findings that a proposed subdivision was consistent with the city's general plan].)

When the form of proceeding has been mandamus, rather than habeas corpus, the fact that it is the rights of criminal defendants or inmates that are vindicated has proved no bar to recovery. In *Olney* v. *Municipal Court* (1982) 133 Cal.App.3d 455 [184 Cal.Rptr. 78], the Court of Appeal ordered fees paid under section 1021.5 to counsel for a misdemeanor defendant who brought a mandate proceeding to vindicate the right of himself and all misdemeanor defendants to sentencing in absentia. (Pen. Code, § 1193, subd. 2.) Later, in *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42 [193 Cal.Rptr. 842], a mandate proceeding treated by the superior court as one for habeas corpus, the Court of Appeal held that counsel for jail inmates who had vindicated their right to exercise while confined, were entitled to an award of fees under section 1021.5. (See also *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89, 112-114 [181 Cal.Rptr. 599].)

Thus, if this proceeding had been brought in mandamus, attorney fees under section 1021.5 would have been available. Nonetheless, the Court of

Appeal concluded that section 1021.5 could not have been intended to apply to habeas corpus proceedings because the statutory procedures governing issuance of the writ are found in the Penal Code. (Pt. 2, tit. 12, § 1473 et seq.) In so concluding, the court relied upon language in *Fogelson* v. *Municipal Court* (1981) 120 Cal.App.3d 858 [175 Cal.Rptr. 64] to the effect that "attorney fees provisions in the Code of Civil Procedure do not deal with criminal actions, unless the words or context compel a holding that they do." (*Id.*, at p. 862.)

The context of *Fogelson* was quite different, however. In that case the fees sought were for defense and appeal in a criminal prosecution. Former Justice Kaus, after examining all available legislative history of that section, concluded that "nothing so much as winks at the possibility that section 1021.5 might be applied to attorney's fees incurred *in the defense* of criminal cases." (*Id.*, at p. 861, italics added.)

Justice Kaus was correct. Both the language of section 1021.5 and the history of the private attorney general doctrine which it codifies reflect a legislative purpose of encouraging the initiation of actions to vindicate statutory and constitutional rights, as well as important public policies, in circumstances in which the expense of litigation would otherwise deter private parties from doing so. The criminal defendant does not initiate the action, and his self interest provides incentive enough to assert available defenses. The criterion of section 1021.5 that "the necessity and financial burden of private enforcement are such as to make the award appropriate" is not met simply because establishing the availability of the defense which is offered incidentally benefits other defendants in similar cases. A decision which has as its primary effect the vindication of the litigant's personal rights is not one which brings into play the attorney fees provisions of section 1021.5. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306].)

The reasoning in *Fogelson,* however, has no application here. ▆▆ That habeas corpus proceedings are governed by provisions of the Penal Code (§ 1473 et seq.) is beside the point. These provisions neither define offenses nor establish defenses. They do create a procedure by which prisoners may vindicate rights related to their confinement and release (see *In re Harrell* (1970) 2 Cal.3d 675, 682 [87 Cal.Rptr. 504, 470 P.2d 640]), which may be utilized as an alternative to actions for declaratory or injunctive relief and/or mandamus. As we said in *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437], albeit in a different context, "[t]he critical fact is the impact of the action, not the manner of its resolution." How the party achieves the goal of enforcing

the right in question is not determinative of the right to an award of attorney fees under section 1021.5. The impact of the litigation is.

## II

■ A prisoner has numerous constitutional rights related to the conditions of his confinement or the lawful execution of his sentence which are independent of the criminal prosecution that led to his status as prisoner. Among these are his state and federal constitutional rights against cruel and/or unusual punishment (U.S. Const., Amend. VIII; Cal. Const., art. I, § 17), and his rights to religious freedom, access to the courts, and freedom from invidious discrimination based on race. (*Wolff* v. *McDonnell* (1974) 418 U.S. 539, 556 [41 L.Ed.2d 935, 950-951, 94 S.Ct. 2963], and cases cited.) These fundamental constitutional rights reflect strong public policies, any institutional violation of which of necessity affects a large number of persons, most of whom are ill equipped by education, training, or financial ability to initiate and adequately prosecute legal actions to vindicate those rights without the assistance of counsel.

Prisoners in California are granted additional rights by statute and regulation, some of which implement the constitutional guarantees, while others create new rights, and prisoners have a due process right to the enforcement of these statutes and regulations. (*Meachum* v. *Fano* (1976) 427 U.S. 215, 226 [49 L.Ed.2d 451, 460, 96 S.Ct. 2532]; *Montanye* v. *Haymes* (1976) 427 U.S. 236, 242 [49 L.Ed.2d 466, 471].)[5]

---

[5]Penal Code sections 2600 and 2601 are among the statutes which reflect a strong legislative policy of recognizing the rights of prison inmates. Section 2600 protects to the extent administratively feasible all of the rights a prisoner would have but for his incarceration: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public." Section 2601 identifies specific rights which may not be restricted except as authorized by that provision: "Notwithstanding any other provision of law, each such person shall have the following civil rights: [¶] (a) To inherit, own, sell, or convey real or personal property, including all written and artistic material produced or created by such person during the period of imprisonment; provided that, to the extent authorized in Section 2600, the Department of Corrections may restrict or prohibit sales or conveyances that are made for business purposes. [¶] (b) To correspond, confidentially, with any member of the State Bar or holder of public office, provided that the prison authorities may open and inspect incoming mail to search for contraband. [¶] (c) To purchase, receive, read, and permit other inmates to read any and all legal materials, newspapers, periodicals, and books accepted for distribution by the United States Post Office, except those which describe the making of any weapon, explosive, poison or destructive device. Nothing in this section shall be construed as limiting the right of prison authorities (1) to open and inspect any and all packages received by an inmate and (2) to establish reasonable restrictions as to the number of newspapers, magazines, and books that the inmate may have in his cell or elsewhere in the prison at one time. [¶] (d) To have personal visits; provided that the department may provide such restrictions as are necessary for the reasonable security of the institution. [¶] (e) To initiate civil actions. [¶] (f) To marry. [¶] (g) To create a power of appointment. [¶] (h) To make a will. [¶] (i) To receive all benefits provided for in Sections 3370 and 3371 of the Labor Code and in Section 5069 of this code."

The rights guaranteed by these sections are among many which the Legislature has preserved for prison inmates by statute. (See also Pen. Code, §§ 2084 [food and clothing]; 2650-2680 [treatment of prisoners]; 2762 [payment for labor]; 2930-2935 [credits on sentence]; 3405-3409 [pregnancy]; and 5009 [religion].) Often the public policy served by the preservation and creation of these rights is of interest not only to the prison inmates themselves, but the public in general. The work furlough program which is the subject of the proceeding[6] is a case in point.

An action on behalf of a prisoner or prisoners to enforce rights under sections 6260-6265 bears none of the indicia of a criminal prosecution. Even when brought by a petition for writ of habeas corpus the action neither tries a criminal charge nor has as its aim the conviction of a crime. Rather the purpose is to compel a state or local officer to comply with duties imposed on him by regulation, statute, or constitutional provision. The label affixed to the pleading by which the action is initiated is not helpful, therefore, in determining whether the context of section 1021.5 compels a conclusion that it applies to these actions when initiated by petition for writ of habeas corpus.

### III

Respondent does not dispute the importance of these constitutional and statutory provisions, or of the underlying public policies, related to the conditions of confinement and rights of prison inmates. He argues only that section 1021.5 has no application to criminal proceedings of which habeas corpus is one, and that engrafting that section onto habeas corpus proceedings is "absurd." In support of the latter argument he suggests that because habeas corpus procedures differ from the procedures followed in civil actions (see *In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257]; *In re Saunders* (1970) 2 Cal.3d 1033, 1047-1048 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr.

---

[6]The work furlough program established by Penal Code sections 6260-6266 requires that respondent "review each inmate for work furlough consideration at least 120 days prior to his or her scheduled parole date" (§ 6264), and to contract with public and private corporations which have beds available "to provide reentry work furlough programs for all inmates 90 days prior to scheduled release" if the inmates are not excluded pursuant to other provisions of the code. (§ 6261.) A preamble to the statute states: "The Legislature finds and declares the following: that overcrowding in correctional institutions is not a desirable method of housing state inmates; that other methods of housing should be developed for appropriate state inmates, particularly if they can be less costly; that reentry programs for inmates who are nearing the completion of their term of incarceration provides a more normal environment and an opportunity to begin reintegrating into society; and that work furlough programs are appropriate only for specified types of inmates for a limited period of time prior to release back into society; and that existing law already recognizes the appropriateness of placing inmates in community facilities." (§ 6260.)

681, 471 P.2d 1]), and discovery is not available, section 1021.5 cannot be applicable. In further support of this argument respondent suggests that awarding fees in these proceedings would encourage bringing civil rights actions by petition for habeas corpus and thereby "erode" the utility of habeas corpus as a speedy means by which prisoners may obtain relief. Respondent foresees superior courts "swamped" with petitions which in reality are seeking monetary relief in the form of attorney fees.

The argument is not persuasive as to the proper construction of the statute or the impact of finding it applicable to habeas corpus actions. If attorney fees were not available in habeas corpus proceedings brought to vindicate the rights of prison inmates generally there is no reason to expect that the burden on courts would in any way be lessened. On the contrary, it is likely that a greater number of proceedings would be brought by individual inmates in propria persona, or by attorneys in petitions for writs of mandamus or complaint for declaratory relief[7] in which attorney fees would be available. Without the assistance of counsel, in propria persona inmates would likely file many more petitions, and impose a greater burden on the judicial system, than that imposed by a single, well-researched, attorney-prepared petition. And, mandamus or declaratory relief proceedings are likely to be more complex, with the potential, as a consequence, of higher fee awards than the relatively modest amount of attorney fees sought by the Prison Law Office here.

Respondent argues nonetheless that the Legislature did not consider habeas corpus in enacting section 1021.5. His authority fails to support a conclusion that the Legislature intended that fee awards be denied in actions in which "an important right affecting the public interest" has been enforced simply because enforcement was by means of habeas corpus when the action might have been brought in a proceeding governed by the procedures of the Code of Civil Procedure. The only legislative history cited by respondent in support of his view of the probable legislative intent is the testimony of a single witness before the Senate Judicial Committee. That witness described the type of litigation to which the proposed statute was directed as prolonged, time consuming, and expensive, and stated that the measure would not apply

---

[7]Because actions to enforce statutory and constitutional rights of prisoners are brought to "compel the performance of an act which the law specifically enjoins, as a duty resulting from an office," (Code Civ. Proc., § 1085), there is no question but that mandamus lies. (See *Bailey* v. *Loggins* (1982) 32 Cal.3d 907 [187 Cal.Rptr. 575, 654 P.2d 758]; *Holt* v. *Kelly* (1978) 20 Cal.3d 560 [143 Cal.Rptr. 625, 574 P.2d 441].) Rights of prisoners are also enforced through actions for declaratory and injunctive relief brought pursuant to Code of Civil Procedure section 1060. (See, e.g., *DeLancie* v. *Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142].)

in more than 99.5 percent of civil cases.[8] It is, of course, possible to utilize a more prolonged, time consuming, and expensive civil action to vindicate the rights of prison inmates. (See e.g., *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles, supra,* 130 Cal.App.3d 89, 98 [class action; fees $105,760].) Respondent concedes that section 1021.5 would apply in such a proceeding. ■ In attempting to ascertain legislative intent when construing a statute we presume that the Legislature did not intend absurd results. (*Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 648 [91 P.2d 577].) ■ Since neither the context nor the language of section 1021.5 demands a conclusion that the Legislature intended that counsel who initiate actions to vindicate or enforce the rights of prison inmates be awarded attorney fees only if they utilize the most expensive means by which to do so, we decline to accept respondent's limited view of the applicability of section 1021.5.[9]

In concluding that section 1021.5 authorizes the award of attorney fees to counsel who initiate proceedings on behalf of prison inmates to enforce or vindicate the rights of those inmates regardless of whether the action is brought by petition for mandamus, complaint for declaratory and injunctive relief, or petition for habeas corpus, we interpret the statute in conformity with well established rules of statutory construction. ■ These rules ". . . 'counsel that the aim of such construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated [citation]; that a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citation]; and that courts should give effect

[8]The comments of staff of the Department of Consumer Affairs and of the Franchise Tax Board in their respective reports urging that Assembly Bill No. 1310, which became section 1021.5, be signed, upon which respondent relies in part, are not legislative history indicative of the intent of the Legislature as these comments were not before the Legislature. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 701 [170 Cal.Rptr. 817, 621 P.2d 856].) Neither do they support respondent's conclusion as to the legislative intent. The reports noted only that "traditionally parties to a civil action must pay their own attorneys' fees . . ." (Consumer Affairs), and that the provision would apply in a "civil action" and most likely affect actions in environmental and consumer fraud areas (Franchise Tax Board).

[9]Respondent also suggests that the existence of Penal Code section 987.2, which authorizes the reimbursement of counsel assigned to represent defendants in criminal proceedings, suggests that the Legislature has insured that habeas corpus petitioners will be represented by appointed counsel when appropriate. Section 1021.5, however, exists to encourage the initiation of proceedings that might not otherwise have been brought to enforce important rights. Penal Code section 987.2 is applicable only after the action has been filed and the party is before the court. The court is not obligated to appoint any particular attorney, and if the action has been filed by an attorney, the court need not appoint counsel at all. In matters in which the public defender is available, even were the court to appoint counsel, there is no discretion to appoint the attorney who initiated the action. There is no reason to presume that the Legislature contemplated that section 1021.5 would not apply because Penal Code section 987.2 exists.

to statutes "according to the usual, ordinary import of the language employed in framing them." [Citation.]' (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)" (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) Our construction of section 1021.5 ensures that the legislative purpose will not be frustrated by a restriction of the availability of attorney fee awards where the restriction is not clearly mandated by the language of the statute.

The judgment of the Court of Appeal is reversed, and the matter remanded for consideration of other arguments made by appellant that were not reached by that court in its prior opinion.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Lucas, J., and Panelli, J., concurred.