[No. D003853. Fourth Dist., Div. One. Feb. 6, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD JACKSON, Defendant and Appellant.

**[Opinion certified for partial publication.¹]**

¹Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of Part III.

---

COUNSEL

Geraldine S. Russell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, Pat Zaharopoulos and Patricia L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**WORK, Acting P. J.**—This is a sentencing appeal in which Charles Edward Jackson contends the trial court erred in refusing to consider his postconvic-

tion treatment in prison and the prison's horrendous living conditions, as well as his mental condition, at a resentencing hearing. Although a defendant's postconviction treatment in prison and the quality of the conditions of confinement often may be relevant evidence for consideration at a sentencing hearing, in the circumstances of this case they were not. Moreover, we conclude that where conditions of confinement violate constitutional standards, the appropriate remedy is not judicial reduction of the sentence imposed but to direct prison authorities to remedy those specific conditions. Finally, the record does not support Jackson's assertion the trial court failed to consider his mental condition as a mitigating factor when exercising its discretion during resentencing. Accordingly, we affirm the judgment.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 1985, we affirmed Jackson's conviction of several counts of armed robbery and forcible sex crimes involving 14 victims on 10 separate occasions but modified the judgment to reflect a lesser conviction in count 13 and remanded the cause for resentencing on that count only and to permit the trial court to exercise its discretion whether to strike the Penal Code section 12022.3, subdivision (a), weapon enhancements. (*People* v. *Jackson* (1985) 164 Cal.App.3d 224, 248 [210 Cal.Rptr. 680].) On October 3, 1985, the trial court resentenced Jackson to prison for 75 years and 8 months, stayed the 4-year punishment for the lesser included offense of count 13 and imposed the same punishment for the weapons enhancements.

At the hearing the defense presented testimony concerning Jackson's preexisting psychological condition and prognosis for treatment in prison, as well as the psychological impact of long-term incarceration within a highly volatile prison. A licensed clinical psychologist, Dr. Ann Evans, had evaluated Jackson in 1983 and diagnosed him as a schizophrenic, paranoid type, with an IQ of 74 and a cannabis dependency. On reexamination in 1985, Evans determined Jackson had a much better grasp of reality. She recommended Jackson receive mental health treatment and medication while in prison to control his schizophrenic symptoms and predicted that with therapeutic intervention his behavior will improve and his aggressive tendencies will diminish. However, Dr. Evans opined Jackson would become more paranoid if he were confined in a violent prison environment for a lengthy duration of 30 to 50 years.

The defense presented further evidence by Dr. Craig Haney, a lawyer and psychologist, regarding the general conditions of confinement in Folsom and

the resulting psychological effects on inmates. He was an expert witness in *Toussaint* v. *McCarthy* (N.D.Cal. 1984) 597 F.Supp. 1388, where the lockup conditions there were condemned as cruel and unusual violating the Eighth Amendment to the United States Constitution.[2] He testified the conditions within the mainline population are often worse than those within the segregated lockup facilities, currently under court order in *Toussaint* v. *McCarthy*. In fact, he noted that under certain circumstances there is even a greater risk of danger within the mainline population. He examined Dr. Evans's reports and spoke with Jackson, finding him experiencing the same kind of problems as other inmates he has counseled, including depression, social withdrawal and difficulty in concentrating—the result of isolation and idleness. After describing some of the conditions of confinement at Folsom, Haney predicted the long-term effect of these conditions on Jackson's psychological condition would be profound, resulting in substantial psychological damage due to the lack of therapeutic intervention and the violent living conditions at Folsom.

Ronald Kremer, a California Department of Corrections Parole and Classification Representative at Folsom Prison, recounted the conditions at Folsom and the classification of inmates serving lengthy sentences for violent offenses. He testified that placement within a particular penal institution, varying in classification from a level one to four in increasing security, is predicated upon an inmate's score on an evaluation point system. He further testified Folsom and San Quentin are the maximum security institutions which house inmates with a score of 56 points or more.[3] An inmate's point score is determined by the length of sentence; disciplinary record; escape record and whether married, working, a veteran, etc. At minimum, the cases are reviewed annually and most often twice a year. Jackson's score of 109 points landed him in Folsom.

Kremer testified the population at Folsom has changed dramatically in light of this new classification score process from housing inmates generally about 27 years of age or older, multiple and long-term offenders, to large numbers of inmates ranging in age between 19 and 21 years old, incarcerated for a wide variety of offenses primarily murder and multiple sex and violent crimes. He stated the escalating violence and racial problems at Folsom are primarily gang-related involving such groups as the Mexican Mafia, the Black Guerilla Family, the Crips, The Aryan Brotherhood and the Nuestra Familia. He further testified that in light of Jackson's crimes, the prison's primary responsibility to the public is to minimize his opportunity for escape; and

---

[2] The Ninth Circuit Court of Appeals affirmed in part, reversed in part and vacated in part the district court's order in *Toussaint* v. *McCarthy* (9th Cir. 1986) 801 F.2d 1080.

[3] However, he did testify that occasionally inmates with less than 56 points are housed at Folsom if they have been removed from less secure institutions for disciplinary problems.

therefore he was placed within a class A restriction at his custody level. Although his restrictive class is determined in a large measure by his prison behavior, he testified it was impossible to predict under what circumstances Jackson would spend the remainder of his prison career. But, based on current policies and procedures, he was going to be stored in Folsom for a while regardless of whether his sentence was 75 or 83 years.[4]

Jackson testified he had been housed at Folsom for two years in the midst of constant racial tension; the guards often fired warning shots; he heard the testimony of the doctors but declared he had "no problems" and did not think he really had a problem with his intellect; before his arrest he had been active in sports and had a college basketball scholarship; and, in prison he had little chance to exercise and had lost 10 to 15 pounds reducing his weight to 175 pounds at a height of 6 feet 2 inches.

Before resentencing, the trial court declared it would not consider in mitigation evidence of the prison conditions under which Jackson had been and would be housed: "I won't consider as a mitigating factor. The fact that prison is bad and that apparently our corrections system is failing to appropriately conduct itself in coming to the—because of funding or whatever reason in the housing of prisoners, I can't consider that as part of the sentencing process. If the appellate court wants me to do so, they can tell me to do so, because I am going to put on this record I am not going to.

". . . . . . . . . . . . . . . . . . . .

". . . If I have to consider that, start considering that at the time of sentence in every case, then something is horribly inappropriate in the system.

"I am giving you your record, [defense counsel], on that issue, that I won't consider the fact that prison is bad. That's for federal judges to decide or for some judge to decide it is cruel and unusual punishment to do it that way. But I am not going to consider that factor as a mitigating factor in this case . . . ."

After further argument of counsel, the court declared: "Exclusive of the conditions which Mr. Jackson has been housed in, which I find to be horrible, there's no other way to describe how we are treating prisoners.

---

[4]Indeed, he noted that one is not eligible for transfer out of Folsom if he was sentenced to 25 years to life with more than a 3-year enhancement, convicted of multiple murders, convicted of multiple or extremely serious sex offenses, a principle in a notorious case of substantial public interest or sentenced to a term under the determinate sentencing law equal to or exceeding 40 years.

"I find no mitigating factors that would allow me to strike the gun use, and I refuse to consider the nature of the prisons at the original sentencing to come to a sentencing result. . . ."

The court rejected defense counsel's argument, imposed punishment for the enhancements and resentenced Jackson to 75 years, 8 months in prison.

## II

### THE TRIAL COURT DID NOT ERR IN NOT CONSIDERING DEFENDANT'S POSTCONVICTION TREATMENT AND THE "HORRENDOUS" LIVING CONDITIONS AT FOLSOM

The essence of Jackson's appeal is that he contends the trial court improperly failed to consider mitigating evidence regarding his postconviction treatment[5] in prison pursuant to California Rules of Court,[6] especially rule 408(a), and applicable case precedent. He asserts the failure to consider such evidence requires remand for another resentencing hearing because it is reasonably probable that had that evidence been considered at the resentencing hearing, a more favorable result would have occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) In other words, citing the determination in *Toussaint* v. *McCarthy, supra,* 597 F.Supp. 1388, the living conditions in the lockup units within Folsom Prison were cruel and unusual in violation of the Eighth Amendment of the United States Constitution, Jackson declares he does not seek to litigate issues related to confinement but merely seeks to establish the "deplorable" conditions at Folsom will have a profound effect upon his behavior and personality—in all probability, retarding any potential for rehabilitation. Consequently, stressing the trial court had the discretion to strike the punishment for the weapon enhancements and therefore reducing the sentence by as much as 15 years and improving his classification and opportunity for treatment, he asserts the sentencing court erred in failing to consider evidence regarding his postconviction treatment in prison and the horrendous living conditions at Folsom.

Preliminarily, it is firmly established that where an appellate court vacates a defendant's sentence due to sentencing error and remands the matter to the trial court for resentencing, a supplemental probation report must be prepared before resentencing, regardless whether defendant is

---

[5]The issue Jackson raises is different from that addressed in *Skipper* v. *South Carolina* (1986) 476 U.S. 1 [90 L.Ed.2d 1, 106 S.Ct. 1699], which holds a court must consider evidence of postconviction *behavior* to show a defendant's good adjustment (or rehabilitation) while in custody, a factor relevant to determining what sentence to impose.

[6]All rule references are to the California Rules of Court.

eligible for probation. (*People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1046 [216 Cal.Rptr. 865]; *People* v. *Brady* (1984) 162 Cal.App.3d 1, 7 [208 Cal.Rptr. 21]; see *Van Velzer* v. *Superior Court* (1984) 152 Cal.App.3d 742, 744-745 [199 Cal.Rptr. 695].) Moreover, where a sentence has been vacated and the issue remanded to the trial court for resentencing, the trial court must consider information concerning defendant's postoriginal sentencing behavior contained in a supplemental probation or corrections report. (*People* v. *Warren* (1986) 179 Cal.App.3d 676, 687 [224 Cal.Rptr. 746]; *People* v. *Brady, supra,* 162 Cal.App.3d at p. 7; *People* v. *Foley, supra,* 170 Cal.App.3d at pp. 1047-1049.) In fact, this court held in *Van Velzer* v. *Superior Court, supra,* 152 Cal.App.3d at pages 744-745, a trial court may properly consider not only matters affecting a defendant up to and including the date of resentencing, but also evidence of his care and treatment in prison after the original sentence.

Jackson's reliance on *Van Velzer* is misplaced. There, defendant pled guilty to child molesting and was sentenced to prison for 13 years, 8 months. He successfully appealed his sentence and the matter was remanded for resentencing. Although he obtained a continuance to have a new probation report prepared together with a psychological evaluation and to have his counsel submit a supplemental statement in mitigation requesting the court to consider matters pertinent to his care and treatment in prison since original sentencing, the resentencing court refused to consider postoriginal sentencing facts. The Court of Appeal held the trial court should consider not only all matters affecting defendant up to the date of resentencing, but also any evidence regarding his care and *treatment* in prison since the date of the original sentencing. This latter holding related to the trial court's consideration of a supplemental statement in mitigation which included three praiseworthy letters from staff members at San Luis Obispo Men's Colony, as well as his counsel's declaration he was not receiving the psychological counselling treatment specifically requested by the court. Consequently, in light of the trial court's original order and concern regarding Van Velzer's treatment within a rehabilitation context of providing psychological counselling, evidence as to his care and treatment in prison postoriginal sentencing was indeed relevant. ■ However, here, in light of the nature of the offenses committed and their number, the underlying intent of the original sentence (of which approximately 60 years was affirmed on appeal) was punitive, not rehabilitative, in character. Accordingly, within this "warehousing" context where confinement, both duration and quality, is designed solely to be punitive in nature and the court has only the discretion whether to strike or impose 15 years, the evidence of the conditions of confinement at Folsom is irrelevant.[7]

---

[7]We reiterate the sentence was affirmed on the first appeal as to 63 years and 8 months, with remand for resentencing limited to count 13 and the weapon enhancements. Conse-

In the abstract, Jackson's contention the conditions of confinement should be considered by the trial court in determining length of sentence imposed raises several questions as to the propriety of such a remedy. Where such conditions either meet, or have not been found to violate, constitutional standards and where rehabilitation is not the concern of the trial court, there is no relevance in the proffered evidence. However, where the conditions of confinement do not meet constitutional standards, one can argue such evidence is relevant to the exercise of the trial court's discretion as to length of sentence because presumably the Legislature's determination of the uniform sentences for specific crimes within the Determinant Sentencing Law was based upon a presumption confinement would be consistent with constitutional standards. Accordingly, it can be argued a defendant should serve a shorter term where confinement conditions are inconsistent with constitutional standards, because such service would be "harder" time. (See *Hutto* v. *Finney* (1978) 437 U.S. 678, 685-688 [57 L.Ed.2d 522, 530-533, 98 S.Ct. 2565].)

 Just as the release of inmates from custody is not an appropriate remedy to established unconstitutional conditions of confinement (*Cook* v. *Hanberry* (5th Cir. 1979) 596 F.2d 658, 660; *Griffin* v. *DeRobertis* (N.D.Ill.E.D. 1983) 557 F.Supp. 302, 304; *Taylor* v. *State* (Ala.Crim. App. 1984) 455 So.2d 270, 271; *Amek Bin-Rilla* v. *Israel* (1983) 113 Wis.2d 514 [335 N.W.2d 384, 389]), we do not believe the proper remedy is judicial reduction of sentence terms. Rather, the remedy is to obtain a judicial declaration the confinement conditions do not meet constitutional standards and an order enjoining confinement under such conditions and directing prison authorities to remedy the specifically challenged conditions. (*Toussaint* v. *McCarthy, supra,* 597 F.Supp. at p. 1419; see, e.g., *Hutto* v. *Finney, supra,* 437 U.S. at pp. 685-688 [57 L.Ed.2d at pp. 530-533]; *Hoptowit* v. *Ray* (9th Cir. 1982) 682 F.2d 1237, 1247; *Ruiz* v. *Estelle* (5th Cir. 1982) 679 F.2d 1115, 1144-1145, amended in part and vacated in part in (5th Cir. 1982) 688 F.2d 266; see also *In re Head* (1986) 42 Cal.3d 223, 231, fn. 7 [228 Cal.Rptr. 184, 721 P.2d 65]; *Griggs* v. *Superior Court* (1976) 16 Cal.3d 341, 347 [128 Cal.Rptr. 223, 546 P.2d 727].)

III*

· · · · · · · · · · · · · · · · · · ·

quently, since it is undisputed a prisoner with a sentence in excess of 40 years will be housed in a class 4 prison such as Folsom, any error in failing to consider the prison conditions at Folsom when exercising sentencing discretion on remand could not have possibly prejudiced Jackson. His placement within a class 4 prison was inevitable regardless of any modifications of his total term at resentencing.

*See footnote 1, *ante,* page 113.

## DISPOSITION

Judgment affirmed.

Butler, J., and Lewis, J., concurred.

A petition for a rehearing was denied February 24, 1987, and appellant's petition for review by the Supreme Court was denied April 22, 1987.