Filed 9/26/24  Calvary Chapel San Jose v. Superior Court CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALVARY CHAPEL SAN JOSE et al., | H051276 |
| Petitioners, | (Santa Clara Super. Ct. No. 20CV372285) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent; | |
| THE PEOPLE OF THE STAT OF CALIFORNIA et al., | |
| Real Parties in Interest. | |

## I.  INTRODUCTION

Calvary Chapel San Jose (Calvary Chapel) and its pastors, Mike McClure and Carson Atherley, failed to comply with any of public health orders issued by the State of California, the County of Santa Clara, and Sara H. Cody, M.D. (collectively, the People) during the COVID-19 pandemic.[1]  The People obtained restraining orders compelling Calvary Chapel to comply with the public health orders, which Calvary Chapel also violated.  The People then initiated contempt proceedings against Calvary Chapel due to

---

[1] Atherley is not a party to the present appeal.

1

the violations of court orders.  The trial court issued two orders against Calvary Chapel and its pastors, the December 17, 2020 and the February 16, 2021 orders of contempt and to pay monetary sanctions.

Calvary Chapel sought review of the contempt orders and monetary sanctions.  In two cases, *Calvary Chapel v. Superior Court* (Aug. 15, 2022, H048734 [nonpub. opn.]) and *McClure v. Superior Court* (Aug. 15, 2022, H048947 [nonpub. opn.]) (collectively, *Calvary Chapel I*), this court annulled the December 17, 2020 and the February 16, 2021 orders of contempt, and reversed the orders to pay monetary sanctions.

Calvary Chapel and McClure (collectively, Calvary) subsequently brought a motion for an award of private attorney general fees pursuant to Code of Civil Procedure section 1021.5, based on their success in obtaining annulment of the contempt orders and reversal of the orders to pay monetary sanctions.[2]  In the order of May 19, 2023, the trial court denied the motion.

On appeal, Calvary contends that the trial court erred in denying their motion because their motion satisfies the section 1021.5 criteria for an award of private attorney general fees.  For the reasons stated below, we will treat Calvary's appeal from the arguably nonappealable May 19, 2023 order as a petition for writ of mandate, and we will deny the petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Underlying Contempt Proceedings*

In 2020 the People issued a series of public health orders to protect the public from the spread of COVID-19 during the first year of the COVID-19 pandemic.  The public health orders included orders restricting indoor gatherings and requiring face coverings, social distancing, and submission of a social distancing protocol by

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

businesses, including churches. It was undisputed in the proceedings below that Calvary Chapel and its pastors had failed to comply with any of these public health orders.

The People filed a complaint for injunctive relief due to the ongoing failure of Calvary Chapel and its pastors to comply with the public health orders. The trial court issued a November 2, 2020 temporary restraining order, followed by a November 24, 2020 modified temporary restraining order and preliminary injunction, that enjoined Calvary Chapel and its pastors from holding indoor gatherings that did not comply with the public health orders' restrictions on indoor gatherings and requirements that participants wear face coverings and socially distance. Calvary Chapel and its pastors were also enjoined from operating without submitting a social distancing protocol to the County of Santa Clara.

Thereafter, Calvary Chapel and its pastors violated the November 2, 2020 temporary restraining order, the November 24, 2020 modified temporary restraining order, and the preliminary injunction. In response, the People sought an order of contempt against Calvary Chapel, which the trial court issued on December 17, 2020, based on the violation of the November 2, 2020 temporary restraining order. The December 17, 2020 order included fines totaling $22,000 pursuant to section 1218, subdivision (a).

The trial court also issued a February 16, 2021 order of contempt based on the violation of the November 24, 2020 modified temporary restraining order and preliminary injunction. The trial court additionally ordered Calvary Chapel to pay $35,000 and MClure to pay $15,000 in monetary sanctions pursuant to section 1218, subdivision (a) for contempt of court.

Calvary Chapel and its pastors sought review of the trial court's contempt orders and orders to pay monetary sanctions. In *Calvary Chapel I,* this court concluded that the temporary restraining orders and preliminary injunctions were facially unconstitutional with respect to the restrictions on indoor gatherings, pursuant to the then recent guidance

3

of the United States Supreme Court regarding the First Amendment's protection of the free exercise of religion in the context of public health orders that impact religious practice (see, e.g., *Tandon v. Newsom* (2021) 593 U.S. 61.)  We noted that the trial court did not have the benefit of the United States Supreme Court's recent guidance when it issued the temporary restraining orders, preliminary injunction, and contempt orders.

However, in *Calvary Chapel* I, this court assumed, without deciding, that the restraining orders were not facially unconstitutional with respect to the public health orders' requirements for face coverings, social distancing, and submission of a social distancing protocol.  This court noted that the trial court had not imposed discrete fines for violations of the unconstitutional restrictions on indoor gatherings and the separate violations of the requirements for social distancing, face coverings, and submission of a social distancing protocol.  Instead, the trial court had imposed a single, aggregate punishment for all violations of the temporary restraining orders.  This court therefore annulled the December 17, 2020 and the February 16, 2021 orders of contempt in their entirety, and reversed the orders to pay monetary sanctions.

**B.  *Section 1021.5 Motion for Attorney Fees***

Calvary subsequently moved for an order awarding them private attorney general fees pursuant to section 1021.5 due to their success in obtaining annulment of the contempt orders and reversal of the orders to pay monetary sanctions in *Calvary Chapel I*.  They argued that they met the statutory criteria for an award of private attorney general fees because:  (1) they were the successful parties since this court annulled both contempt orders and reversed the sanctions orders; (2) their disobedience of the trial court's temporary restraining orders served the important public interest of upholding First Amendment rights; (3) their success on appeal conferred a significant benefit on churches and people of faith, and therefore society as a whole; (4) private enforcement of First Amendment rights was necessary to defend their right to continue worshiping; and (5) the County of Santa Clara should pay their attorney fees in the interest of justice.

4

Calvary also argued that their request for an award of private attorney general fees in the amount of $433,905 was reasonable.

## C. *Opposition to Motion for Section 1021.5 Attorney Fees*

In opposition to Calvary's motion for private attorney general fees, the People argued that section 1021.5 does not apply to contempt proceedings. According to the People, contempt proceedings concern the enforcement of court orders and the authority of the court, and therefore the party that initiated a contempt proceeding should not bear its cost. They also emphasized the one-way attorney fees provision in section 1218, subdivision (a), which provides that attorney fees may be awarded to the party that initiated a successful contempt proceeding, and does not provide that attorney fees may be awarded to the party that successfully defended a contempt proceeding.[3] Further, the People contended that awarding attorney fees to the party that successfully defended a contempt proceeding would not be consistent with private attorney general doctrine codified at section1021.5, which is intended to encourage public interest litigation.

Alternatively, the People argued that Calvary's motion for attorney fees did not satisfy the statutory criteria for an award of attorney fees pursuant to section 1021.5. They maintained that Calvary Chapel's defeat of the underlying contempt proceedings did not result in enforcement of an important right affecting the public interest, did not confer a significant benefit on the general public or a large class of persons, and the cost of defeating the contempt action did not transcend Calvary Chapel's personal interest. Finally, the People contended that the request for attorney fees was overbroad.

---

[3] Section 1218, subdivision (a) provides in part: "[A] person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred by this party in connection with the contempt proceeding."

### D. *Trial Court Order*

In the May 19, 2023 order the trial court denied Calvary's motion for private attorney general fees pursuant to section 1021.5. Noting that the language of section 1218, subdivision (a) did not support an award of attorney fees to the party that successfully avoided a contempt finding, the trial court determined that it was unlikely that the requirements for an award of private attorney general fees under section 1021.5 could be met in the context of a contempt proceeding. The court reasoned that the accused would always have an independent incentive to defend a contempt proceeding without the incentive of an award of attorney fees if successful.

The trial court further determined that Calvary had not met the requirements for an award of section 1021.5 attorney fees because opposing the contempt action was not necessary for Calvary to assert First Amendment rights. The court reasoned that Calvary could have asserted its First Amendment rights by complying with the orders restricting indoor gatherings while at the same time challenging those orders. Finally, the trial court found it significant that this court in *Calvary Chapel I* "did not entirely absolve Calvary of its failure to follow the Court's orders as Calvary asserts."

## III. DISCUSSION

Calvary contends that the trial court erred in denying their motion for private general attorney fees pursuant to section 1021.5. We will begin our review with the threshold issue of appealability.

### A. *Appealability*

The People have not challenged the appealability of the May 19, 2023 order denying Calvary's motion for private attorney general fees pursuant to section 1021.5. However, "[t]he existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1. [Citations.]" (*Jennings v.*

6

*Marralle* (1994) 8 Cal.4th 121, 126–127.) Thus, "[a] trial court's order is appealable when it is made so by statute. [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) Section 904.1, subdivision (a)(2) provides that a postjudgment order is appealable where it was "made after a judgment made appealable by [section 904.1, subdivision (a)(1)]."

In the present case, there is a doubt as to whether the May 19, 2023 order denying Calvary's motion for private attorney general fees is appealable as a postjudgment order because the order was made in the context of contempt proceedings, following this court's decision in *Calvary Chapel I* annulling the underlying contempt orders. It is well established that a judgment or order in a contempt proceeding is not appealable. (§ 1222; § 904.1, subd. (a)(2); *Bermudez v. Municipal Court* (1992) 1 Cal.4th 855, 861, fn. 5.) Calvary's statement in its opening brief that the May 19, 2023 order denying attorney fees is appealable as a postjudgment order is not persuasive, since it relies on the decision in *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222, which did not involve a nonappealable order or judgment in a contempt proceeding.

However, it has been held that "an order denying attorney fees may be appealable as a final judgment, even when the underlying order or judgment is not appealable." (*Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1388. Other appellate courts have ruled that "[a]n order denying a motion for attorneys' fees under section 1021.5 is appealable. [Citation.]" (*Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 964, disapproved on another ground in *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226, fn. 4 (*Whitley*).)

In this case, we need not determine whether the May 19, 2023 order denying Calvary's motion for private attorney general fees pursuant to section 1021.5 is an appealable order. The California Supreme Court has instructed that courts have the power to treat a purported appeal from a nonappealable postjudgment order as a

7

petition for writ of mandate, although "we should not exercise that power except under unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 (*Olson*).) The *Olson* court "found it appropriate to treat an appeal as a petition for a writ of mandate when it concluded that there was no adequate remedy at law, 'the issue of appealability was far from clear in advance,' the records and briefs included the necessary elements for a petition for a writ of mandate, there was no indication that the trial court would appear separately or become more than a nominal party, and dismissing the appeal rather than exercising the court's discretion to reach the merits through a writ of mandate proceeding would be ' " 'unnecessarily dilatory and circuitous.' " ' [Citation.]" (*Shrewsbury Management, Inc. v. Superior Court* (2019) 32 Cal.App.5th 1213, 1221 ; see also *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142 [treating a purported appeal as a petition for writ of mandate is appropriate where there is uncertainty about an order's appealability.].)

We will exercise our discretion to treat Calvary's appeal as a petition for a writ of mandate since the issue of appealability of the May 19, 2023 order was not clear in advance, there is no indication that the trial court would appear separately, and the records and briefs are sufficient for a petition for writ of mandate.

### B. *Section 1021.5*

We next turn to the merits of Calvary's contention that the trial court erred in denying their motion for attorney fees pursuant to section1021.5, beginning our analysis with the statutory criteria for an award of private attorney general fees. We will assume, without deciding, that private attorney general fees may be awarded to the alleged contemnor who succeeds in defending a contempt proceeding that involves a First Amendment issue.[4]

---

[4] We note that "[i]t is well established that an appellate decision may provide the basis for a fee award even when the trial court ruling does not. [Citations.]" (*Serrano v. Stefan Merli Plastering Co.* (2011) 52 Cal.4th 1018, 1029–1030, fn. omitted.)

### 1. Statutory Criteria

Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

"[T]he fundamental objective of the private attorney general doctrine of attorney fees is ' "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." ' [Citations.] The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933.)

In other words, the purpose of section 1021.5 is "to financially reward attorneys who successfully prosecute cases in the public interest, and thereby ' "prevent worthy claimants from being silenced or stifled because of a lack of legal resources." ' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 568.)

### 2. Standard of Review

An order awarding attorney's fees under section 1021.5 is generally reviewed for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) However, where, as here, the material facts are undisputed and the question is whether

the criteria for an award of attorney's fees have been satisfied, the issue involves statutory construction and a question of law, which we review de novo. (*Id*. at pp. 1175-1176.)

### C. *Analysis*

Calvary contends that the trial court erred in denying the motion for private attorney general fees under section 1021.5 because the one-way attorney fees provision of section 1218, subdivision (a) does not preclude an award of fees to the alleged contemnor who successfully defends a contempt proceeding, and its motion satisfies all statutory criteria for an award of private attorney general fees.

The People respond that section 1021.5 is inapplicable to contempt proceedings, since section 1218, subdivision (a) expressly provides for an award of attorney fees only to the party that initiated the contempt proceedings in order to incentivize private parties to assist the court. Additionally, the People argue that the policies underlying section 1021.5 are inconsistent with contempt proceedings, since the alleged contemnors in contempt proceedings have sufficient incentive to mount their own defense without the incentive of an attorney fees award. Alternatively, the People maintain that Calvary's motion failed to meet all statutory requirements for an award of private attorney general fees under section 1021.5.

As we will discuss, we determine that Calvary's motion does not satisfy the statutory criteria for an award of private attorney general fees; specifically, the second criterion of section 1021.5, which is: "the necessity and financial burden of private enforcement." (*Id*., subd. (b).) The second criterion " ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citations.] The 'necessity' of private enforcement ' " ' "looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is necessary." ' [Citations.]" ' [Citation.]" (*Whitley*, *supra,* 50 Cal.4th at pp. 1214–1215.)

Thus, " ' " '[a]n award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his [or her] personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his [or her] individual stake in the matter.' [Citation.]" ' [Citation.] A court generally determines whether the litigation places a disproportionate burden on the individual by comparing the expected value of the litigation at the time it was commenced with the costs of litigation. [Citation.]" (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 952.)

We find the decision in *In re Head* (1986) 42 Cal.3d 223 (*Head*)to be instructive with regard to the application of the section 1021.5, subdivision (b) criterion of financial burden. In considering whether prison inmates who successfully challenged the constitutionality of the Department of Corrections' work furlough program could be awarded private attorney general fees under section 1021.5, our Supreme Court addressed section 1021.5 in the context of criminal defendants: "Both the language of section 1021.5 and the history of the private attorney general doctrine which it codifies reflect a legislative purpose of encouraging the initiation of actions to vindicate statutory and constitutional rights, as well as important public policies, in circumstances in which the expense of litigation would otherwise deter private parties from doing so. The criminal defendant does not initiate the action, and his self interest provides incentive enough to assert available defenses. The criterion of section 1021.5 that 'the necessity and financial burden of private enforcement are such as to make the award appropriate' is not met simply because establishing the availability of the defense which is offered incidentally benefits other defendants in similar cases. A decision which has as its primary effect the vindication of the litigant's personal rights is not one which brings into play the attorney fees provisions of section 1021.5. [Citation.]" (*Head*, *supra*, at p. 228; see also *In re Nicole S.* (2019) 39 Cal.App.5th 91, 104 ["the financial incentives integral to [§] 1021.5 are unnecessary in the dependency context"].)

11

We determine that under the circumstances of this case, Calvary has not shown that the financial incentives provided by section 1021.5 were necessary to assert its constitutional defense to the contempt proceedings. This court's annulment of the contempt orders and reversal of thousands of dollars in monetary sanctions in *Calvary Chapel I* "ha[d] as its primary effect the vindication" of Calvary Chapel's personal rights to avoid contempt findings and significant monetary sanctions. (*Head*, *supra*, 42 Cal.3d at p. 228.) Consequently, Calvary Chapel's self-interest was sufficient incentive to assert constitutional defenses in the contempt proceedings, and the financial incentive of an award of private attorney general fees was not necessary. (See *ibid*.)

Moreover, we are not persuaded by Calvary's contention that their motion satisfied the section 1021.5, subdivision (b) criterion of financial burden. Calvary makes the conclusory arguments that: "[p]rivate enforcement was necessary here. Calvary chose to continue worshiping in adherence to its sincerely held religious beliefs and to help the hurting in its community;" and "[t]he economic burden of enforcement justifies subsidizing Calvary's attorneys." Calvary also asserts that it was not motivated by pecuniary interests, thereby satisfying the financial burden criterion.[5]

However, as this court has noted, "section 1021.5 attorney fees serve ' "as a 'bounty' for pursuing public interest litigation, not a reward for litigants motivated by their own interests who coincidentally serve the public" '. . . . Thus, '[i]f the enforcement of the public interest is merely "coincidental to the attainment of . . . personal goals" [citation] or is "self serving" [citation], then this requirement is not met.' [Citations.]" (*Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1151.)

---

[5] We understood counsel for Calvary to elaborate on this argument during oral argument, asserting that Cavalry Chapel is not a for profit institution and will not receive a financial benefit from bringing a section 1021.5 motion for private attorney general fees. However, the financial status of Calvary Chapel is irrelevant to our analysis of the section 1021.5, subdivision (b) criterion of financial burden.

12

We therefore determine that Calvary's motion for private attorney general fees does not satisfy the section 1021.5 subdivision (b) financial burden criterion for an award of private attorney general fees, and for that reason we conclude that the trial court did not err in denying the motion.  Having reached this conclusion, we need not address the parties' remaining arguments on appeal.  We will therefore deny the petition for writ of mandate challenging the trial court's May 19, 2023 order.

## IV.  DISPOSITION

The petition for writ of mandate challenging the May 19, 2023 order denying Calvary Chapel of San Jose and Mike McClure's motion for private attorney general fees is denied.  Costs in this original proceeding are awarded to the People of the State of California, County of Santa Clara, and Sara H. Cody, M.D.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Calvary Chapel San Jose et al. v. Superior Court (People et al.)*
**H051276**