[No. B223653. Second Dist., Div. Six. Aug. 2, 2011.]

EDNA VALLEY WATCH et al., Plaintiffs and Appellants, v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Respondents.

## COUNSEL

Law Offices of Michael R. Jencks and Michael R. Jencks for Plaintiffs and Appellants.

Warren R. Jensen, County Counsel, and Timothy McNulty, Chief Deputy County Counsel, for Defendants and Respondents.

## OPINION

**GILBERT, P. J.**—Here we hold a party may receive attorney's fees incurred in an administrative hearing. The trial court denied a portion of appellants' attorney's fees requested under Code of Civil Procedure section 1021.5, the private attorney general statute.[1] The court also denied one party's attorney's fees incurred in a petition for writ of mandate because of the party's personal stake in the litigation. We reverse.

Section 1021.5 allows attorney's fees in administrative proceedings. In addition, a party may not be disqualified from receiving attorney's fees because of his personal stake in the litigation. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206 [117 Cal.Rptr.3d 342, 241 P.3d 840].)

### FACTS

The Unitarian Universalist Fellowship of San Luis Obispo County (Church) planned to build an 11,000-square-foot church complex in the Edna

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

Valley area of San Luis Obispo County (County). Philip G. da Silva (da Silva) owns property adjacent to the planned church facility. Edna Valley Watch (Edna) is a nonprofit association.

The County Planning Commission granted the Church a conditional use permit for its project. Da Silva appealed the decision to the Board of Supervisors of the County of San Luis Obispo (Board). The Board denied the appeal.

On July 11, 2008, da Silva and Edna filed a petition for writ of mandate to direct the County to rescind its approval of the project. The petition was based on the alleged failure of the County to comply with the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.)

Six days after the petition was filed, the Church's counsel wrote to da Silva and Edna's counsel. The letter stated that the Church was abandoning the approval it received from the County and would return to the permitting process. The letter requested da Silva and Edna take no further action on the writ petition.

Apparently concerned that the approval was still valid, da Silva and Edna refused to dismiss. On August 20, 2008, the Church's counsel wrote to assure da Silva and Edna that the Church would not reenter the approval process, and that the project was dead. Da Silva and Edna still refused to dismiss. A number of case management conferences were held. By the time of the case management conference on November 13, 2008, the Board had adopted a resolution rescinding the project's approval. Da Silva and Edna refused to dismiss until January 26, 2009.

On April 21, 2009, da Silva and Edna filed a motion for attorney's fees pursuant to section 1021.5. The parties requested $35,045.50: $19,329.50 for the administrative appeal to the Board; $8,041 for "litigation"; and $7,674.50 for the fee motion. Da Silva claimed 13 percent or $4,620.40, and Edna claimed 87 percent or $30,424.40.[2]

The trial court found that the writ petition was the "catalyst" for the ultimate withdrawal of the project application. The court concluded that as a matter of law the parties are not entitled to an award of fees incurred in administrative proceedings. (Citing *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1457–1458 [240 Cal.Rptr. 1].)

---

[2] The numbers are from Edna and da Silva's motion for attorney's fees. Their mathematics appears to be incorrect. But who is going to care about a few dollars?

The trial court also concluded that "da Silva's personal stake in blocking the project was not so disproportionate to the cost of this litigation that an award of fees to him is necessary or appropriate." In so concluding, the court found: The proposed 35-foot-high, 11,000-square-foot, multiuse facility was located immediately adjacent to da Silva's residence. The residence was a 1903 Victorian (Victorian) purchased in 1997. From the date of purchase until the proposed project was terminated, da Silva spent over $350,000 in upgrades to his Victorian, in addition to his personal time and labor. The Victorian has a market value of more than $1 million.

The trial court cited letters from da Silva to county supervisors stating that the proposed project would be devastating to his family's peace, safety and security, not to mention his plans to turn the Victorian into a bed-and-breakfast inn. The letters cited noise, light pollution, loss of privacy, and loss of the view he "paid for."

The trial court determined Edna is entitled to an award of fees incurred in litigation. The court stated, however, the claim for fees must be reduced. The court found there was unnecessary litigation on a case that should have been quickly resolved. The court awarded Edna $2,625 for the litigation and $895 for the fee motion.

## DISCUSSION

### I

Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The ordinary standard of review for a motion for attorney's fees is abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].) De novo review of the trial court's order is warranted, however, where the determination is based on statutory construction. (*Ibid.*)

### II

Da Silva and Edna contend the trial court erred in concluding that fees incurred in administrative proceedings cannot be awarded.

■ Section 1021.5 allows an award of fees "in any action." The question is whether the administrative proceedings fall within the definition of "action" as that term is used in the section.

In *Best v. California Apprenticeship Council, supra*, 193 Cal.App.3d 1448, an electrical apprenticeship program disciplined Best for refusing to work at a nuclear powerplant. Best appealed on the ground his refusal was based on his religious beliefs. He prevailed in an administrative hearing. But the California Apprenticeship Council, a state-created agency, reversed. Best ultimately prevailed on appeal from the denial of his petition for writ of administrative mandate. (§ 1094.5.)

Best moved for attorney's fees under section 1021.5. The trial court awarded fees for the writ petition, but denied them for the administrative proceedings. The Court of Appeal reversed the denial of fees for the administrative hearing.

■ *Best* noted, "The term 'action,' as defined in the Code of Civil Procedure, refers to a distinction between two classes of judicial remedies: (1) actions, which are *ordinary proceedings* derived from actions at law or suits in equity, and (2) *special proceedings*, which are established by statute and usually create new remedies unknown to the common law or equity courts. . . . Thus, the distinction between 'action' and 'proceeding' in the Code of Civil Procedure has nothing to do with the distinction between judicial and administrative proceedings, but rather distinguishes between two types of judicial proceedings." (*Best v. California Apprenticeship Council, supra*, 193 Cal.App.3d at p. 1460, fn. & citations omitted.)

*Best* relied on *In re Head* (1986) 42 Cal.3d 223 [228 Cal.Rptr. 184, 721 P.2d 65]. There the question was whether fees may be awarded under section 1021.5 in habeas corpus proceedings to vindicate prisoners' rights. The Supreme Court rejected the Court of Appeal's conclusion that fees could not be awarded because habeas corpus is a special proceeding of a criminal nature and not a civil action. (*Head*, at p. 226.) The court held "the nature of the relief sought, not the label or procedural device by which the action is brought, is determinative of the right to seek fees under section 1021.5." (*Ibid.*; see *Best v. California Apprenticeship Council, supra*, 193 Cal.App.3d at p. 1461.) *Best* concluded, "[T]he term 'action' in section 1021.5 encompasses administrative proceedings which were useful and necessary to the public interest litigation." (*Best*, at p. 1461.)

■ Here the trial court concluded *Best* did not apply because the administrative proceedings were not sufficiently connected to the court action. But as da Silva and Edna point out, the exhaustion of administrative remedies

is a prerequisite to a lawsuit challenging a CEQA determination. (Citing Pub. Resources Code, § 21177.) Thus the administrative proceedings here qualify under *Best* as "useful and necessary to the public interest litigation." (*Best v. California Apprenticeship Council, supra*, 193 Cal.App.3d at p. 1461.) In fact, there can be no public interest litigation without first filing an administrative proceeding.

The County relies on *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563 [30 Cal.Rptr.2d 581]. There Ciani brought an action to establish the California Coastal Commission's jurisdiction over a demolition permit. The court decided the commission had jurisdiction. Ciani subsequently participated in the commission's administrative hearings on the permit. Ciani sought attorney's fees under section 1021.5. The court cited *Best* in determining that the subsequent administrative hearings were not useful and necessary to the public interest in establishing the commission's jurisdiction. In a footnote, the court stated: "The *Best* court did suggest a statutory interpretation of section 1021.5 which is somewhat at odds with our view. *Best* viewed the term 'action' to encompass nonjudicial actions (*Best v. California Apprentice Council* (1987) 193 Cal.App.3d at pp. 1456–1458), a view shared by neither the *Best* dissent (*id.* at pp. 1472–1473) nor us. We note, moreover, that this interpretive foray may be thought dictum, since *Best* also held that fees incurred in the administrative action were recoverable under a federal statute (42 U.S.C. § 1988) which does not limit fees to those incurred in 'actions,' but instead allows for fees 'in any action *or proceeding*.' (*Best, supra*, 193 Cal.App.3d at pp. 1472–1473, italics added.) *Best* cited federal authority as interpreting that statute to encompass fees incurred during administrative proceedings. (*Best, supra*, at p. 1466.) There was thus no need to base the award solely on an interpretation of section 1021.5." (*Ciani*, at p. 576, fn. 10; see also *Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 214 [106 Cal.Rptr.2d 863] [agreeing with *Ciani*'s criticism of *Best* and noting that no case has followed *Best*].)

■ What *Ciani* considered dictum in *Best* is now the law of this case. The word "action" as used in section 1021.5 is not limited to the common definition of "action" found in the Code of Civil Procedure. (See *In re Head, supra*, 42 Cal.3d at pp. 227–228.) The County does not contest that a petition for a writ of administrative mandate, classified as a special proceeding in the Code of Civil Procedure, qualifies as an action within the meaning of section 1021.5. (See § 1094.5.)

■ In deciding what constitutes an "action" within the meaning of section 1021.5, we must look to the purpose of the section. Section 1021.5 is a

codification of the private attorney general doctrine. (*In re Head, supra*, 42 Cal.3d at pp. 226–227.) Its purpose is to encourage suits effectuating a strong public policy by awarding fees to persons who through lawsuits successfully bring about the benefits of such policies to a broad class of citizens. (*Id.* at p. 227.) ██ Here da Silva and Edna could not have brought their lawsuit without exhausting administrative remedies. Under the circumstances, to say that administrative proceedings are not part of the "action," as that term is used in section 1021.5, would defeat the purpose of the statute and could discourage many lawsuits in the public interest.

The County argues there is scant evidence of Edna's participation in the administrative proceedings. But we are only deciding that the administrative proceedings are part of the "action" within the meaning of section 1021.5. To even qualify for the court's consideration of attorney's fees, the participation of a "successful party" must have conferred a significant benefit on the public or a large class of persons. Once this condition is met, the trial court must consider the extent of the parties' participation in the administrative proceeding and the cost and time necessary to reasonably prepare for a challenge to these proceedings. The fees the court deems appropriate may range from no fees to reasonable fees under the circumstances.

We do not decide the question whether a party who only participates in an administrative proceeding, and not a court action, is entitled to fees.

### III

On another point, da Silva contends the trial court erred in denying him fees.

In denying da Silva a fee award, the trial court relied on his "personal stake" in blocking the project. The court cited *Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 965 [88 Cal.Rptr.2d 565]. *Williams* decided that the court could deny a prevailing plaintiff a fee award under section 1021.5 because of his nonpecuniary interest in the litigation. (74 Cal.App.4th at p. 966.)

██ While this case was pending on appeal, however, our Supreme Court decided *Conservatorship of Whitley, supra*, 50 Cal.4th 1206. *Whitley* disapproved the line of cases on which the trial court relied. It holds that a litigant's personal nonpecuniary interests may not be used to disqualify the litigant from obtaining fees under section 1021.5. (*Whitley*, at p. 1211.) Instead, the court must focus on the financial burdens and incentives involved in bringing the lawsuit. (*Ibid.*)

*Whitley* cites *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 9–10 [232 Cal.Rptr. 697], for the proper method of balancing costs and benefits: " 'The trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves. . . . Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome. . . . Thus, if success would yield . . . the litigant group . . . an aggregate of $10,000 but there is only a one-third chance of ultimate victory they won't proceed—as a rational matter—unless their litigation costs are substantially less than $3,000. [¶] 'After approximating the estimated value of the case at the time the vital litigation decisions were being made, the court must then turn to the costs of the litigation—the legal fees, deposition costs, expert witness fees, etc., which may have been required to bring the case to fruition. . . . [¶] The final step is to place the estimated value of the case beside the actual cost and make the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Conservatorship of Whitley, supra,* 50 Cal.4th at pp. 1215–1216.)

Da Silva points out that his petition did not seek monetary damages and did not seek to permanently terminate the project. He argues that the test of a person's interest must be based on the verified petition and the relief it seeks. He claims that because his petition sought only compliance with CEQA, the pecuniary benefit he might realize is too speculative to deny him an award of fees.

■ Da Silva cites no authority in support of his argument. Nothing in section 1021.5 requires the court to confine its analysis to the relief sought on the face of the pleadings and to feign naiveté as to the plaintiff's true purpose in bringing an action. Abandonment of a project is hardly a unique result in a CEQA action. There is very little doubt the permanent termination of the project was the result da Silva hoped for in this case. Nor is there doubt da Silva obtained a pecuniary benefit from the termination of the project.

Here da Silva had financial as well as nonpecuniary interests in stopping the project. It appears the trial court relied on both in denying him fees under section 1021.5. The trial court shall reconsider da Silva's attorney's fees without regard to his nonpecuniary interests in light of *Whitley.*

We reverse and remand for further proceedings consistent with this opinion. Costs are awarded to appellants.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied September 1, 2011, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied October 26, 2011, S196358.