Filed 1/12/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HERON BAY HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF SAN LEANDRO,<br><br>    Respondent, Defendant, and<br>    Appellant;<br><br>HALUS POWER SYSTEMS et al.,<br>    Real Parties in Interest<br>    and Appellants. | A143985<br><br>(Alameda County<br>Super. Ct. No. RG13677840) |

Real parties in interest Halus Power Systems and Louis A. Rigaud individually and dba Halus Power Systems (collectively, Halus Power), appeal from the trial court's post-judgment order granting in part plaintiff Heron Bay Homeowners Association's (Heron Bay HOA's) motion for attorneys' fees pursuant to Code of Civil Procedure[1] section 1021.5. Defendant City of San Leandro (San Leandro) also appeals and joins in all arguments presented in Halus Power's opening and reply briefs. For reasons stated below, we affirm the order.

---

[1] All undesignated statutory references below are to the Code of Civil Procedure.

## I.   BACKGROUND

### A.  Facts

San Leandro is located in the San Francisco Bay.  Halus Power owned an approximately five-acre parcel in an industrial zone in San Leandro, where it designed, manufactured, and remanufactured wind turbines used to generate electricity.  It proposed to install a single 100-foot-tall wind turbine on its property to generate renewable energy for its business and conduct on-site research and development.  To do so, it sought a variance from zoning restrictions on height.

The California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) "requires that a public agency determine whether a project may have significant environmental impacts before it approves the project.  [Citations.]"  (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 574 (*Preserve Poway*).)  Accordingly, San Leandro conducted a review of the proposed project.  The proposed turbine would have been located within the San Francisco Bay Estuary, a major refuge for many species of waterfowl and shorebirds, including four threatened or endangered species.  Additionally, the proposed location would have been approximately 500 feet from some of the homes included in the 629-unit Heron Bay residential development.

"Under CEQA, an agency must require an [environmental impact report (EIR)] for any project that 'may have a significant effect on the environment,' unless a categorical exemption applies.  [Citations.]"  (*Preserve Poway*, *supra*, 245 Cal.App.4th at p. 574.)  Alternatively, if there is substantial evidence "the project will have a significant environmental effect, but that effect may be reduced to a level of insignificance by implementing mitigation measures, the agency may adopt [a mitigated negative declaration (MND)] allowing the project to go forward subject to those measures.  [Citations.]"  (*Id*. at p. 575.)  San Leandro here circulated a notice, attaching an initial study, and advising that it proposed the project proceed through an MND, with two specified mitigation measures.

Various entities and individuals submitted comments in response. The East Bay Regional Park District observed that the proposed location was "sandwiched between two marshes . . . harbor[ing] high concentrations of waterbirds, shorebirds, and numerous raptor species," and it objected that San Leandro had not provided the data necessary to determine whether the project would result in significant environmental impacts. The California Department of Fish and Game recommended eight mitigation measures to minimize threats to birds. Counsel representing Heron Bay HOA and its individual members, owners of the 629 units in the residential development, submitted comments, demanding San Leandro prepare an EIR, and expressing concern, among other things, about the project's potential impact on views, birds and their habitats, aircraft navigational radar, noise and vibration levels, and property values. Individual Heron Bay homeowners also submitted comments, raising various issues, including concerns about the potential impact on homeowner property values.

San Leandro did not change course, but, instead, released a revised MND adding eight mitigation or monitoring levels, essentially those recommended by the Department of Fish and Game. Heron Bay HOA and its members submitted further comments in response, again insisting an EIR was required and again expressing concern, among other things, regarding an anticipated resulting decline in property values if the project were completed. San Leandro's Board of Zoning Adjustments ultimately approved the MND, after adding one further mitigation measure, and granted the variance. Heron Bay HOA appealed the board's decision, but the city council affirmed it, approving the project.

### B. Procedural History

#### 1. The Merits

Heron Bay HOA filed a petition for a writ of mandate in the trial court seeking an order directing San Leandro to set aside its approvals, and to comply with CEQA by preparing an EIR. The trial court granted the petition, finding that San Leandro failed to

3

comply with CEQA.[2]  Under CEQA, the court observed, an agency may proceed "by way of a MND only if there is no substantial evidence before the agency that the project as revised may have a significant effect on the environment.  [Citations.]"  " 'Whenever there is substantial evidence supporting a fair argument that a proposed project may have a significant effect on the environment, [the court noted,] an EIR normally is required. . . . .  "The fair argument standard is a 'low threshold' test for requiring the preparation of an EIR," ' " and there is " ' "*a preference for resolving doubts in favor of environmental review*." ' "  (Quoting *Citizens for Responsible & Open Government v. City of Grand Terrace* (2008) 160 Cal.App.4th 1323, 1331-1332.)  Noting that most Heron Bay residents would not be able to see the proposed turbine, however, and that " 'obstruction of a few private views in a project's immediate vicinity [was] not generally regarded as a significant environmental impact[,] [citation],' " the trial court did "not find substantial evidence supporting a fair argument that the project as mitigated [might] have a significant effect on private aesthetics."  The trial court found, however, that there was "substantial evidence supporting a fair argument that the project as mitigated [would] have a significant effect on biological resources" (specifically birds), "on noise," and "on aesthetic resources" (i.e., on the public's views "from the anticipated Bay Trail").  In light of these findings, the trial court (1) directed San Leandro to set aside its approvals, and (2) directed San Leandro and Halus Power not to proceed with work on the project unless and until San Leandro had approved a CEQA-compliant EIR.  The court entered judgment in favor of Heron Bay HOA.  Halus Power and San Leandro did not challenge the ruling or judgment on appeal.  San Leandro subsequently filed a return to the writ of mandate, advising the trial court that it had adopted a resolution setting aside its approval

_____

[2]  The trial court also found that San Leandro failed to comply with its own zoning code in granting the variance.

4

of the MND and the variance, and its affirmance of the Board of Zoning Adjustment's decision. Halus Power did not proceed with the project.

### 2. Attorneys' Fees

Following entry of judgment, Heron Bay HOA moved the trial court for an award of attorneys' fees under section 1021.5. The fees motion advised that the Law Offices of A. Alan Berger (the Berger law firm) represented Heron Bay HOA in the administrative proceedings, while the law firm of Rogers Joseph O'Donnell (the RJO law firm) represented it in the CEQA litigation before the trial court. According to the moving papers, Heron Bay HOA members, through their membership dues, paid the Berger law firm $84,720.00. Additionally, under a partial contingency agreement, they paid the RJO law firm $64,638.00, and the firm agreed to seek reimbursement for the remainder of its fees ($166,981.50) as part of an eventual attorney fee award.[3] The fees' motion requested a 2.0 multiplier for the latter amount ($166,981.50), to compensate the RJO law firm for the contingency-related risk. In total, therefore, Heron Bay HOA sought a fee award of $483,321.00 (i.e., $166,981.50 (contingency amount) x 2.0 = $333,963.00 + $64,638.00 (paid to the RJO law firm) and $84,720.00 (paid to the Berger law firm) = $483,321.00).

Halus Power and San Leandro filed a joint opposition to the fees motion. They contended: Heron Bay HOA did not have legal authority to prosecute a case in the public interest; Heron Bay HOA was motivated exclusively by a desire to protect its members from the significant anticipated decline in their property values if the turbine were constructed; and this pecuniary interest clearly outweighed the fees Heron Bay HOA had paid, negating its right to recovery under section 1021.5.

---

[3] Altogether, Heron Bay HOA advised, it paid more than $149,000 out-of-pocket in attorneys' fees.

Following a hearing, the trial court issued an order granting the fees motion in part. The court concluded "[t]he lawsuit conferred a significant benefit on the public." But it also found the Heron Bay HOA "had a significant financial incentive to initiate the litigation" because it feared installation of the proposed turbine would reduce members' property values. After discounting the suggestion of Heron Bay HOA's president, based on unspecified "studies," that the total reduction could be between $30 million and $150 million, the trial court acknowledged that any valuation of real estate involved uncertainty, and that the project's impact here would be distributed unevenly among Heron Bay HOA members, "with properties closer to the turbine and with a better view of the turbine suffering larger declines in value."

Nonetheless, the court determined it was possible to value the projected loss that Heron Bay HOA and its members feared. Attempting to do so, the court "[*a*]ssum[*ed*] a rational fear of an average 2.5% drop in value" for all of the 629 residences. (Italics added.) Crediting evidence that each residence on average was worth $500,000, the court concluded this "*suggest*[*ed*]" Heron Bay HOA and its members "sought to avoid a property loss *in the neighborhood* of $[7.8 million]." (Italics added.) Finding that "experienced CEQA counsel would have thought there was a 75% probability of success when the litigation commenced," the trial court then discounted its $7.8 million estimate by the corresponding 25 percent risk of a loss, and concluded the "probable monetary value of the benefit of the litigation was *in the neighborhood of* $[5.8 million]" (italics added) (or $9,000.00 per residence). In comparison, the trial court judge found, based on knowledge of the case, including the "procedural, factual, and legal complexity," and based on fee awards entered in other CEQA cases the same judge had handled, Heron Bay HOA could have reasonably estimated, "[w]hen deciding to initiate the lawsuit," that its fees would total about $240,000.00.[4]

---

[4] Although the trial court's order gave the amount as $232,500.00, the accompanying calculations indicate the court intended the number to read "$242,000.00,"

Citing the Supreme Court's decision in *Conservatorship of Whitley* (2010) 50 Cal.4th 1206 (*Whitley*), the court next considered the mechanism for paying counsel. In *Whitley*, the Supreme Court observed that section 1021.5 was intended to address "the problem of affordability" in public interest litigation where "litigants will be unable either to afford to pay an attorney hourly fees or to entice an attorney to accept the case with the prospect of contingency fees." (*Id*. at p. 1219.) In light of this statutory purpose, the trial court concluded, it was necessary to consider here "whether anticipated benefits from the litigation [could] be used to pay counsel," i.e., "whether any financial benefit [was] immediately bankable." The trial court reasoned, "A plaintiff who expects a lawsuit to result in an immediate financial gain can finance the lawsuit through a contingent fee agreement because if the lawsuit is successful then the plaintiff can pay her or his lawyers from the plaintiff's immediately bankable financial recovery. In contrast, a plaintiff who expects a lawsuit to result in financial benefits that accrue over a period of years may have more difficulty financing the lawsuit through a contingent fee agreement because . . . the plaintiff may have difficulty retaining counsel who agree to be paid over that period of years. Similarly, a plaintiff who expects a lawsuit to result in avoiding a financial loss may have more difficulty financing the lawsuit because the plaintiff would still need to pay the lawyer out of his or her now [un]diminished assets."

Weighing these anticipated benefits and costs, the trial court concluded it was "a very close call" whether Heron Bay HOA was entitled to a fee award. If "required to make an all or nothing decision on fees," the trial court observed, it would deny the motion. But, the court interpreted the relevant case law as allowing it the discretion instead to apportion (or adjust) the amount of the award to account for Heron Bay HOA's "significant financial incentive" to initiate litigation. "[W]here a party pursues litigation

which it rounded down to the nearest thousand. This is evident because, after stating the total estimated fees, the order estimated costs would likely total $10,000, and it concluded fees and costs together would total $252,500, which it "rounded to $250,000."

7

for both its private pecuniary interest and in the public interest," it concluded, a court could award fees to alleviate "the financial burden of bringing the lawsuit," while deducting " 'an amount reflecting the fee that plaintiffs could reasonably have been expected to bear themselves.' " (Quoting *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 942, fn. 13 (*Woodland Hills*).)

Applying these conclusions, the trial court granted Heron Bay HOA's fees motion in part. Concluding Heron Bay HOA and its members were sufficiently motivated to retain counsel in the administrative proceedings by their concern completion of the project would reduce their property values collectively by $7.8 million, the trial court apportioned responsibility for the Berger law firm's fees ($84,720.00) entirely to Heron Bay HOA, denying the latter's motion insofar as it applied to those fees. The same concerns motivated Heron Bay HOA to retain the RJO law firm to initiate the CEQA litigation, the court concluded; but that action involved "different risks and a much larger financial commitment." The court, therefore, apportioned responsibility for the RJO law firm's reasonable fees ($231,619.50) equally between Heron Bay HOA, on the one hand, and Halus Power and San Leandro, on the other hand. Finding the RJO law firm was entitled to a multiplier of 1.2 for its time, because of the risk it assumed under the partial contingency fee agreement (i.e., $231,619.50 x 1.2 = $277,943.40), the court ordered Halus Power and San Leandro to together pay the RJO law firm (1) $138,971.70 for its work on the CEQA litigation (i.e., $277,943.40 x 0.5), and (2) $42,500.00 for its work on the fees motion (an amount the court calculated by applying a reasonable attorney hourly rate of $425 per hour multiplied by 100 hours),[5] or a total of $181,471.70.

Halus Power and San Leandro filed a timely appeal of this ruling.

---

[5] The RJO law firm had sought $77,769.50 for its work on the fee motion, which represented 180.3 attorney hours multiplied by each attorney's respective hourly rate. The attorneys' hourly rates ranged between $185 and $695 per hour, with most hours billed at $425 per hour.

8

## II.  DISCUSSION

### A.  *General Legal Principles*

" '[T]he Legislature adopted section 1021.5 as a codification of the "private attorney general" attorney fee doctrine that had been developed in numerous prior judicial decisions. . . . [T]he fundamental objective of the private attorney general doctrine of attorney fees is " 'to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens.' " [Citations.]  The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will *as a practical matter frequently be infeasible*.'  [Citation.]" (*Whitley*, *supra*, 50 Cal.4th at pp. 1217-1218.) "Because public interest litigation often yields nonpecuniary and intangible or widely diffused benefits, and because such litigation is often complex and therefore expensive, litigants will be unable either to afford to pay an attorney hourly fees or to entice an attorney to accept the case with the prospect of contingency fees, thereby often making public interest litigation 'as a practical matter . . . infeasible.'  [Citation.]  . . . . Section 1021.5 addresses this affordability problem with the inducement of attorney fees for public interest litigation when certain conditions in the statute are met."  (*Id*. at pp. 1219-1220.)

"[E]ligibility for section 1021.5 attorney fees is established when '(1) [the plaintiff's] action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons," and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate." '

9

[Citation.]" (*Whitley*, *supra*, 50 Cal.4th at p. 1214.)[6] " ' "[Utilizing] its traditional equitable discretion," [the trial] court "must realistically assess the litigation and determine, from a practical perspective" [citation] whether or not the statutory criteria have been met.' [Citation.]" (*Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 187.)

" 'We review an attorney fee award under section 1021.5 generally for abuse of discretion. Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the sound discretion of the trial court, unless the question turns on statutory construction, which we review de novo.' [Citation.] ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." ' [Citation.]" (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378 (*Espejo*).)

### B. Analysis

On appeal, and before the trial court, Halus Power and San Leandro do not and did not dispute that Heron Bay HOA's action resulted in the enforcement of an important right affecting the public interest, a significant benefit was conferred on the general public or a large class of persons, and there was a necessity for private enforcement. Our

---

[6] Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

10

focus is limited, therefore, to the final element of section 1021.5's eligibility test, and particularly, to the question of whether the "financial burden of private enforcement . . . [is] such as to make the award appropriate."[7] (§ 1021.5, subd. (b).) "In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]" (*Whitley*, *supra*, 50 Cal.4th at p. 1215.) " '[S]ection 1021.5 is intended to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation.' [Citation.]" (*Id*. at p. 1221.)

Here, the trial court concluded Heron Bay HOA and its members had "a significant financial incentive to initiate the litigation" because they feared installation of the proposed turbine would reduce their property values. This made Heron Bay HOA's entitlement to attorneys' fees a "very close call," the court observed. Reasoning that the financial incentive was "mitigated by the uncertain value of the benefit sought," however, the court exercised its discretion by granting the fees motion in part, denying it in part, and then apportioning responsibility for payment of Heron Bay HOA's attorneys' fees among the parties. The resulting award was less than half the amount Heron Bay HOA originally requested (i.e., $181,471.70 rather than $483,321.00).

---

[7] Although in their briefs opposing the fees motion and on appeal, Halus Power and San Leandro (collectively, appellants) included a few remarks suggesting the value of the public benefit the action conferred was minimal, they offered no legal arguments on this point, and agreed in their appellate reply brief the financial burden element was "the only issue presented on this appeal."

11

Appellants assert the trial court erred in applying apportionment principles to grant a partial fee award. They contend the trial court could only consider apportionment when determining the *amount* of the fee award, *after* concluding a party's financial interest in the litigation was insufficient to disqualify it from receiving any fee award. Here, as the trial court estimated Heron Bay HOA's potential loss at about $5.8 million and the reasonable fees expenditure at $250,000, appellants submit, the court must have skipped a step, moving on to consider apportionment, without properly evaluating whether Heron Bay HOA's costs transcended its members' personal interests. We disagree, because the trial court ultimately concluded the "value of the benefit sought" was uncertain and that conclusion was supported by substantial evidence.

As the trial court noted, membership in the Heron Bay HOA was mandatory, each member had a vote, and "properties closer to the turbine and with a better view of the turbine [would] suffer[] larger declines in value." In granting the writ petition, the trial court found that the proposed turbine would be visible from only a few Heron Bay residences. Although the potential loss of property value for some residents may have been significant, therefore, it was reasonable to question whether the majority of Heron Bay HOA members would have had sufficient incentive to retain counsel for the CEQA litigation, having previously incurred litigation fees to no avail in the administrative proceedings, if there had not been the possibility of securing an award under section 1021.5.[8] The uncertainty was underscored by the fact that Heron Bay HOA actually secured representation for the CEQA litigation here "on a 'partially contingent basis,' " which apparently allowed it, at least initially, to pay the RJO law firm less than a

---

[8] This is particularly true as San Leandro produced a study during the administrative proceedings finding "no evidence . . . that home prices surrounding wind facilities [were] consistently, measurably, or significantly affected by either the view of wind facilities or the distance of the home to those facilities." Heron Bay HOA cited this study as support for its argument, in its fees motion, that it did not seek "any reasonably certain financial benefit" through this litigation.

third of the amount the firm actually billed. This indicated Heron Bay HOA and its members did not actually value the "benefit" here sufficiently to undertake the litigation absent the incentive of a potential fee award under section 1021.5.[9]

Additionally, as the court noted, it was relevant that the benefit Heron Bay HOA and its members sought through the litigation could not be used to pay counsel and was not "immediately bankable." Unlike a "plaintiff who expects a lawsuit to result in an immediate financial gain [and] can finance the lawsuit through a contingent fee agreement," the trial court observed, a "plaintiff who expects a lawsuit to result in avoiding a financial loss may have more difficulty financing the lawsuit because the plaintiff would still need to pay the lawyer out of his or her now [un]diminished assets." CEQA litigation costs could be "significant," the court observed, and represented a "much larger financial commitment" than the previous administrative proceeding. These factors were pertinent in evaluating whether the personal interests of Heron Bay HOA's members transcended the litigation costs. (See, e.g., *Woodland Hills*, *supra*, 23 Cal.3d at p. 938 [under section 1021.5, the trial court "must realistically assess the litigation . . . from a practical perspective"].)

Although the trial court did not expressly state a finding on the financial burden element before discussing apportionment, the record supports an implied finding that

_____

[9] Appellants, in their reply brief, attempt to refute this suggestion and the idea that the trial court relied on it by noting the trial court's observation that Heron Bay HOA could pay litigation costs from its reserves or by borrowing money. Neither the trial court nor appellants cite any portion of the record confirming the existence of such reserves. Regardless, the availability of funds is irrelevant to the question of whether a majority of the members of Heron Bay HOA had a financial incentive to expend such funds on litigation when, according to the trial court, only a few members would have had views of the proposed turbine. We do not agree with appellants that the existence of a partial contingency agreement here was entirely irrelevant, or that we must disregard the nature of the agreement because Heron Bay HOA declined to produce the actual agreement, citing attorney-client privilege; there is no indication appellants attempted to compel production.

Heron Bay HOA had a sufficient financial incentive to incur some, but not all, of the costs of the litigation. (See, e.g., *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 [" ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent" ' "].) The trial court's apportionment discussion reflected this implied finding. The court stated that it would "apportion fees between those that [Heron Bay] HOA would have reasonably incurred to further its own interests and those of its members and those that the HOA would not have incurred, or could not have retained counsel to incur, without the prospect of a fee award under [section] 1021.5." In *Woodland Hills*, *supra*, our Supreme Court confirmed apportionment was appropriate in such circumstances: "[I]f the trial court finds that plaintiffs' potential benefit was such that individuals in their position could reasonably have been expected to incur attorney fees if the amount of the fee bore a more reasonable relation to such benefit, the trial court, in awarding fees under section 1021.5, may deduct from the total reasonable attorney fee an amount reflecting the fee that plaintiffs could reasonably have been expected to bear themselves." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 942, fn. 13; see also *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 155-156 ["the court may award against the opposing party the difference between the full amount of reasonable attorney fees and an amount that the successful litigant could reasonably be expected to bear"]; cf. *Whitley*, *supra*, 50 Cal.4th at p. 1226 [apportionment of fees may be appropriate in connection with the "public interest" requirement].) The trial court acted within its discretion, therefore, in apportioning to Heron Bay HOA (1) full responsibility for paying the Berger law firm's fees (for representation in the administrative proceedings) and (2) 50 percent responsibility for paying the RJO law firm's reasonable fees (for representation in the CEQA litigation), while apportioning to appellants' the remaining 50 percent responsibility for the RJO law firm's reasonable fees.

Appellants suggest, in the alternative, that Heron Bay HOA was ineligible to seek attorneys' fees because it acted purely out of self-interest or, if it acted for altruistic

14

purposes, that it lacked authority to do so, because its governing documents did not permit it to pursue public interest or environmental litigation. But "[a] pecuniary interest in the outcome of the litigation is not disqualifying. 'If the party claiming fees has a pecuniary interest in the outcome of the lawsuit, the issue is whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit.' [Citations.]" (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1352; see also *Whitley*, *supra*, 50 Cal.4th at p. 1211 [section 1021.5 is not intended to "compensate with attorney fees only those litigants who have altruistic or lofty motives"].) As discussed, the trial court implicitly answered the threshold question in the affirmative here, although it concluded apportionment was appropriate. Even if this were not the case, however, appellants' argument that Heron Bay HOA lacked authority to pursue public interest or environment litigation fails because they do not cite any specific provision of the 48-page governing document that they contend effected this restriction, and our review of the document also uncovered no such proscription.

Notably, the trial court did not find, and the record does not support the conclusion, that Heron Bay HOA and its members were motivated in initiating this litigation solely by a desire to avoid a loss in property values. Although the public comments that Heron Bay HOA and its individual members submitted during the administrative process raised concerns about the project's potential impact on property values, they also expressed worries about the potential impact on wildlife, aesthetics, health, and noise levels. Heron Bay HOA additionally submitted a consultant's report suggesting the project would "have a potentially significant impact on aesthetics, biological resources, and noise." The fact that a party had a pecuniary interest in initiating litigation does not automatically signify more altruistic concerns played no role in the decision.

Appellants additionally contend the trial court's conclusion that Heron Bay HOA's "financial incentive" here was "mitigated by the uncertain value of the benefit sought"

15

contradicted its earlier estimate assigning a value to Heron Bay HOA's avoided property value loss. We do not discern a contradiction, however, but, rather view the court's statement as confirmation that it did not ultimately value the projected property loss at $5.8 million. The court arrived at that figure by *assuming* Heron Bay HOA and its members *subjectively feared* "an average 2.5% drop in [the] value" of all 629 residences,[10] and then plugging that number into the test described in *Whitley*, *supra*, for weighing costs and benefits. (See *Whitley*, *supra*, 50 Cal.4th at pp. 1215-1216.) Under that test, " '[t]he successful litigant's reasonably expected financial benefits are determined by discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time. [Citations.] The resulting value must be compared with the plaintiff's litigation costs actually incurred, including attorney fees, expert witness fees, deposition costs and other expenses.' [Citation.]" (*Espejo*, *supra*, 13 Cal.App.5th at p. 379.)[11]

It is questionable whether a trial court may rely on an arbitrary estimate in evaluating the extent of a party's personal stake in litigation under section 1021.5. (See *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 740 & fn. 14 (*Keep Our Mountains Quiet*) [rejecting as conjecture attempt to quantify the value

---

[10] Although the trial court used the terms "reasonable" and "rational" in describing Heron Bay HOA's expectation and fear, it confirmed in a footnote it was applying a subjective standard.

[11] Courts of Appeal have interpreted *Whitley* differently as to whether this test is required in every instance, an issue that we do not decide. (See, e.g., *Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, 772 [*Whitley* only referred to the test as " 'illustrat[ive]' " in underscoring the need for courts to focus on monetary, rather than nonmonetary benefits]; *Summit Media LLC v. City of Los Angeles*, *supra*, 240 Cal.App.4th at p. 192 [*Whitley* did not require that the test "be applied literally in every case"]; *Norberg v. California Coastal Commission* (2013) 221 Cal.App.4th 535, 545 (*Norberg*) [automatically applying the test discussed in *Whitley*].)

16

of an avoided property loss based on an unsupported assumption].) But the trial court undoubtedly erred in concluding that a subjective standard applied when evaluating a party's personal stake in the outcome of litigation under section 1021.5. "Although objective financial incentives and subjective motives may overlap, and indeed sometimes may be indistinguishable," *Whitley* confirmed that "only the former is the proper subject of the court's inquiry when assessing the financial burden of litigation under section 1021.5." (*Whitley*, *supra*, 50 Cal.4th at p. 1221.)

The error is not fatal to the trial court's decision, however, because, as noted, it did not actually rely on its own arbitrary assessment in deciding the fees motion.[12] Instead, after concluding Heron Bay HOA "had a significant financial incentive to initiate the litigation," the court observed that the value of the benefit remained "uncertain" and could be addressed through apportionment. Appellants do not dispute that Heron Bay HOA had a significant financial incentive to initiate litigation, and Heron Bay HOA did not appeal the trial court's conclusion on this point. The only question, therefore, is whether the incentive was so large and the benefit so certain that it precluded any award.

Appellants assert "abundant evidence" confirmed the answer was yes. Aside from the court's arbitrary valuation of Heron Bay HOA's feared loss, however, the only specific valuation appellants cite is a broad estimate of the total loss for all 629 residences that Heron Bay HOA President Benny Lee asserted, without citing any evidence or authority, in one sentence of a multipage public comment he submitted during the administrative process. In the one sentence, Lee asserted that (1) *unspecified*

_____

[12] We note the trial court did not even state an express finding that Heron Bay HOA and its members subjectively feared a $5.8 million reduction in their property values. Instead, the court couched its "estimate" in qualifying language, stating that it "[a]ssum[ed] a rational fear of an average 2.5% drop"; this "*suggest[ed]*" a motive to avoid a property loss "*in the neighborhood*" of $7.8 million; and "[t]o the extent" Heron Bay HOA's litigation prevented a reduction in property value, it "derived a financial benefit for its members." (Italics added.)

17

*"[s]tudies . . . suggested"* the values of properties within a mile of a turbine dropped between 10 percent and 30 percent, and (2) applied here, this would represent a total reduction of "between $15,000 to $150,000 per home or $30 [sic] million to $150 million for the community."[13]  (Italics added.)  Although, as the court noted, property owners may offer opinions regarding the value of their property (Evid. Code, § 813), a trier of fact is not obligated to accept the opinion (see, e.g., *City of Perris v. Stamper* (2016) 1 Cal.5th 576, 598-599 [fact finder determines a property's value]) and there is no claim the court erred here in rejecting the HOA president's unsupported assertion regarding the potential value of the loss for all homeowners.  As appellants cite no other evidence suggesting a specific valuation of the projected loss, we cannot agree the evidence here required a finding that Heron Bay HOA's stake in the litigation made it ineligible for a fee award of any size.

Appellants contend it is well established that "preservation of property values *can* be a disqualifying pecuniary interest" under section 1021.5 (italics added), and "need not be quantified with absolute mathematical precision."  As support for this proposition, appellants rely particularly on *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106 (*Beach Colony II*).  There, a real estate development partnership, which planned to construct 10 condominium units in a coastal area, sought to void a permit condition that would have increased its costs by $300,000.  (*Id*. at pp. 109, 114.)  The partnership ultimately prevailed, obtaining a published opinion, and was awarded attorneys' fees.  (*Id*. at pp. 109, 111-112.)  The Court of Appeal reversed the award, however, because the partnership made "no attempt to compare its litigation costs to the immediate economic benefit" that it received through the litigation—apparently offering

---

[13]  Heron Bay HOA incorporated and adopted by reference Lee's entire multipage public comment in its own public comments, and its board of directors included the "$50,000 to $150,000" estimate in an e-mail urging members to attend a city hearing regarding the proposed project.

18

no evidence at all regarding the amount of attorneys' fee it incurred—contending instead simply "that the general public got something for nothing at [its] expense." (*Id.* at p. 113 & fn. 5.) As support for its decision to reverse the award, the Court of Appeal relied on the following facts: the partnership's sole motive in initiating litigation was "economic self-interest" (*id.* at p. 114); "the benefits it obtained [were] immediately and directly translated into monetary terms" (*id.* at p. 113) in that its victory allowed the partnership to save $300,000 in improvement expenses (*id.* at p. 114); and the partnership did not produce "*any* evidence to support an inferred finding that its legal costs transcend[ed] its personal interest in [the litigation]." (*Id.* at p. 115, italics added.)

The decision is easily distinguishable as none of those key facts existed here. To the contrary, the record here contains evidence that Heron Bay HOA and its members were motivated to initiate the CEQA litigation in part by non-pecuniary interests, including concerns about the proposed turbine's potential impact on wildlife, aesthetics, health and noise levels. The trial court agreed that the monetary value of the benefit they sought was uncertain. And Heron Bay HOA submitted detailed evidence demonstrating the financial costs of its litigation, including attorneys' fees.[14]

While *Beach Colony II* is not instructive, other cases are on point. *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213 (*Citizens Against Rent Control*) is one example. There, a group of Berkeley landlords successfully challenged the constitutionality of a city ordinance that would have limited the funds they could contribute to defeating a proposed rent-control ordinance. (*Id.* at pp. 219-221,

---

[14] Appellants rely to a lesser degree on *Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, but it is distinguishable for the same reasons. The Court of Appeal there affirmed denial of a fee award for a landowner who had filed a "*private* nuisance" action for "purely private" reasons—i.e., to force construction of an electrical power generation plant in a different location, "away from his property line" (*id.* at p. 559)—and the landowner himself estimated he thereby avoided a $100,000 loss in property value, while incurring only $22,000 in attorneys' fees (*id.* at p. 560), estimates that the trial court apparently credited.

19

230.) When the landlords subsequently sought a fee award under section 1021.5, the city opposed the request, contending plaintiffs were sufficiently motivated to pursue the litigation by their private pecuniary interests because they feared enactment of rent control would decrease rental property values. (*Id*. at p. 230.) The Court of Appeal rejected this argument, however, affirming the trial court's fees award. (*Id*. at pp. 219-220, 230.) It reasoned that the plaintiffs had received no direct pecuniary benefit from their litigation, and that "[a]ny benefit in the form of preventing erosion of property values was at least once removed from the results of the litigation" because "freedom from the contribution limit" did not guarantee defeat of the initiative measure. (*Id*. at p. 230.) "[T]he amount of any monetary advantage was speculative," therefore, the court concluded. (*Ibid*.) Further, after noting the plaintiffs' motivations "clearly extended beyond preventing rent control," because the plaintiffs continued to defend their judgment after rent control became a reality in the city, the Court of Appeal remarked: "On these facts, [the] argument of financial motivation disintegrates into a claim that property owners are cut off from the benefits of section 1021.5 whenever they pursue litigation that might someday help them further or secure their property interests. The claim is untenable." (*Id*. at pp. 230-231.)

The same conclusions apply here, for reasons aptly summarized in a second case, *Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th 714, which involved key facts almost identical to those at issue in this case. In *Keep Our Mountains Quiet*, as here, an association of local residents filed a CEQA challenge, seeking to require preparation of an EIR, after the county adopted an MND that would have allowed a neighboring landowner to commence a project—securing a use permit to host numerous special events per year—despite noise and traffic concerns. (*Id*. at pp. 719-721, 727.) After granting the association's request, the court awarded attorneys' fees, and the landowner appealed. (*Id*. at pp. 719, 727.) As appellants do here, the landowner contended the association and its members were disqualified from receiving a fees award because many

20

members submitted written comments confirming they had a financial incentive to initiate the litigation, namely, a desire to avoid property value losses. (*Id.* at pp. 719, 727, 739.) The Court of Appeal rejected this argument, based on reasoning that is equally applicable here.

The court began by observing that "[n]o evidence was submitted attempting to quantify any potential property value reductions." (*Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at pp. 739-740.) Although the landowner's attorney had posited a figure, assuming each members' residence would sustain a $20,000 reduction in value, the Court of Appeal rejected the figure, because it was "based on conjecture." (*Id.* at p. 740 & fn. 14.) Quoting *Citizens Against Rent Control*, *supra*, 181 Cal.App.3d at p. 230, the Court of Appeal then ruled that any benefit in the form of an avoided loss in property values was indirect as the trial court's ruling did not guarantee changes to the challenged project, the amount of any resulting monetary advantage was speculative, and neighboring property owners were not disqualified from seeking an award under section 1021.5 simply because they pursued litigation " 'that might someday help them further or secure their property interests.' [Citation.]" (*Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at p. 740.) "Because '[a]ny potential financial incentive for [the Association] and its members [was] indirect and largely speculative,' " the Court of Appeal determined, the " 'trial court did not abuse its discretion in concluding the financial burden criterion was satisfied.' " (*Ibid.*, quoting *Plumbers & Steamfitters, Local 290 v. Duncan* (2007) 157 Cal.App.4th 1083, 1099; see also *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1116, 1124, 1126-1127 [although plaintiffs were "probably the greatest beneficiaries" of their CEQA litigation, the trial court did not err in awarding them 50 percent of their reasonable attorneys' fees, because plaintiffs sustained "no direct pecuniary benefit" by obtaining a writ of mandate requiring a supplemental EIR considering the impact of the proposed project on viticultural issues, and "any future money advantage" was "speculative"].)

21

We reach the same conclusions for the same reasons here. As in *Citizens Against Rent Control* and *Keep Our Mountains Quiet*, plaintiff Heron Bay HOA and its members neither expected nor received any direct pecuniary benefit from their litigation. Any benefit they received in the form of avoiding a loss in property values was at least once removed from the results of the litigation, because the trial court's ruling did not guarantee San Leandro would refuse the requested variance or require Halus Power to make changes to the project following adoption of an EIR, or that Halus Power would abandon the project.[15] The amount of any monetary advantage, therefore, was speculative. On these facts, we reject the suggestion Heron Bay HOA and its members were cut off from the benefits of section 1021.5 because they pursued litigation that " 'might someday help them . . . secure their property interests.' " (*Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at p. 740, quoting *Citizens Against Rent Control*, *supra*, 181 Cal.App.3d at pp. 230-231.)

Although appellants devote considerable effort to distinguishing the facts, discrediting the analysis, and minimizing the importance of the *Keep Our Mountains Quiet* decision, we are unconvinced. Appellants attempt to distinguish the facts, for example, by contending that, unlike in *Keep Our Mountains Quiet*, here there was evidence quantifying the amount of the reduction in property value that Heron Bay HOA initiated litigation to prevent. Appellants presumably refer to Heron Bay HOA's president's unsupported suggestion which we previously quoted that all members might see the value of their homes reduced by "between $50,000 to $150,000." But, again, the trial court rejected this estimate, giving it no weight, in a ruling that is not challenged on appeal. Appellants cite no other evidence except "the trial court's . . . *analysis*", but the

---

[15] Although the trial court stated that the evidence suggested Heron Bay HOA wanted to prevent installation of the turbine entirely, and not just to delay or require changes to the project, the decision about whether and how the project would proceed did not rest with Heron Bay HOA, and the end result, therefore, remained uncertain after the trial court entered judgment in its favor.

latter does not fill the gap as it is the trial court's duty "to weigh and interpret evidence" (*National Football League v. Fireman's Fund Insurance Company* (2013) 216 Cal.App.4th 902, 918), not to create it.

Appellants also attempt to differentiate this case by observing that, while *Keep Our Mountains Quiet* concluded any financial benefit was indirect and speculative— because the trial court's ruling granting a writ of mandate did not guarantee changes to the proposed project (*Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at p. 740)— here the trial court found the financial benefit was "direct" and "non-speculative," and Halus Power ultimately did abandon the project. Appellants cite the pages of the trial court's order in which it initially assigned a value of $5.8 million to the loss that Heron Bay HOA and its members subjectively feared. As discussed, however, the trial court did not ultimately rely on this tentative estimate, concluding instead the value of the benefit that Heron Bay HOA and its members sought remained "uncertain." Further, appellants' argument does not address the fact that the trial court's ruling here—as in *Keep Our Mountains Quiet*—did not directly produce any financial "benefit." The trial court did not, and could not, for example, order San Leandro to withhold approval for the project. Thus, " '[a]ny benefit in the form of preventing erosion of property values was at least once removed from the results of the litigation.' " (*Keep Our Mountains Quiet*, at p. 740.)

Appellants suggest it would "write the 'financial burden' element entirely out of Section 1021.5" if the value of the asserted financial benefit in the form of loss of property value, must be quantified with objective evidence before it is considered, particularly in CEQA cases. Appellants point to three cases in which courts applied the financial burden element to conclude plaintiffs were ineligible for fee awards without requiring " 'empirically-derived' economic data." But, in two of those cases, the courts had a basis for assigning a value, while in the third case the court affirmed denial of an award relying primarily on other grounds. (See, *Norberg*, *supra*, 221 Cal.App.4th at

23

p. 544 [plaintiff's had a financial incentive to initiate litigation to overturn residential permit application conditions so that he could make $250,000 in improvements to his oceanfront property]; *Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312, 1317, 1322 [plaintiff had a financial incentive to initiate litigation, requiring county to rescind approval of a neighboring project, which would have seriously impacted his plan to turn his $1 million home into a bed-and-breakfast inn after he made $350,000 in upgrades];[16] *Christward Ministry v. County of San Diego* (1993) 13 Cal.App.4th 31, 49-50 [affirming denial of fee award based on conclusion the plaintiff's litigation did not confer a significant benefit on the general public].)[17]

Finally, appellants contend the trial court erred in concluding it should give Heron Bay HOA "the benefit of the doubt" in light of the "uncertainties regarding the pre-litigation cost/benefit analysis." Citing *Norberg*, they note Heron Bay HOA had the

---

[16] It is worth noting that in *Edna Valley Watch v. County of San Luis Obispo*, *supra*, the Court of Appeal actually reversed the trial court's order denying fees based on the Supreme Court's decision in *Whitley*, *supra*, 50 Cal.4th at p. 1211, because the trial court there had relied on the plaintiff's " 'personal stake' " in blocking the project, a nonpecuniary interest. (*Edna Valley Watch*, *supra*, 197 Cal.App.4th at pp. 1315, 1320.) Although the Court of Appeal concluded the plaintiff also had a financial interest in stopping the project, it did not affirm denial of the fee award on that basis but, rather, remanded the matter to the trial court to reconsider the issue in light of *Whitley*. (*Id*. at pp. 1321-1322.)

[17] It is not actually clear whether the Court of Appeal in *Christward Ministry v. County of San Diego*, *supra*, relied on the existence of a pecuniary or a nonpecuniary private interest as an additional basis for affirming denial of the plaintiff's fees motion. The court mentioned the plaintiff's eligibility under the financial burden element in a single sentence after a lengthier analysis of the significant benefit element, stating only that it found the trial court's "assessment of Christward's private interest in the litigation" to be reasonable. (*Christward Ministry*, *supra*, 13 Cal.App.4th at p. 50.) The trial court had stated that "Christward's 'private interests . . . with reference to the use of their property [was] the real basis for [the] action." (*Id*. at p. 49.) Although the Court of Appeal's decision indicated Christward, a nonprofit corporation, operated a retreat on its property, " 'for the experience of God-in-nature' " (*id*. at p. 36), it did not confirm or directly suggest Christward's private *financial* interests were at stake in the litigation.

24

burden of proving its litigation costs transcended the private interests it sought to benefit. (*Norberg*, *supra*, 221 Cal.App.4th at pp. 545-546.)  While appellants are correct about the burden of proof, we are not persuaded the trial court misunderstood this point.  Rather, our review of the entire record confirms the trial court held Heron Bay HOA to its burden—denying its fees motion in part, and declining to award even half of its reasonable attorneys' fees—based on its conclusion that Heron Bay HOA had a significant financial incentive to initiate litigation, even though evidence confirming the existence and value of the benefit sought was minimal at best.

To the extent appellants contend Heron Bay HOA failed to meet its burden of proof, for example, by failing to adequately and objectively quantify the potential reduction in property values that it avoided through this litigation, we disagree.  As an initial matter, we note the contention appears to contradict appellants' assertions, in support of other arguments, that it was not necessary to precisely quantify the value of the benefit that Heron Bay HOA sought.  Leaving this point aside, however, we conclude that Heron Bay HOA did meet its burden of proving the financial burden of the litigation transcended the value of its private pecuniary interests, making a partial award appropriate.  Heron Bay HOA's fees' motion provided detailed information regarding its litigation costs, and correctly pointed out that Heron Bay HOA and its members received no "reasonably certain financial benefit" by securing an order directing San Leandro to prepare an EIR.  (See *Citizens Against Rent Control*, *supra*, 181 Cal.App.3d at pp. 230-231; *Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at p. 740.)  On appeal, Halus Power and San Leandro had the burden of proving the trial court abused its discretion in granting the partial fee award (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 954), for example, by ignoring evidence, if such existed, that Heron Bay HOA and its members received a financial benefit disqualifying them from receiving any award.  It has not met this burden.

25

## III. DISPOSITION

We affirm the judgment. Heron Bay HOA is entitled to its costs on appeal, including its attorneys' fees for successfully defending this appeal, with the amount to be determined by the trial court. (See *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1422 [granting fees on appeal under section 1021.5], disapproved on other grounds by *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142; § 1033.5, subd. (a)(10).)[18]

---

[18] As neither Halus Power nor San Leandro directly responded to Heron Bay HOA's request for attorneys' fees on appeal, the appropriateness of this award is not in dispute.

 

                             _____

                             Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Streeter, J.

*Heron Bay Homeowners Association v. City of San Leandro* (A143985)

Heron Bay Homeowners Association v. City of San Leandro (A143985)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Evelio M. Grillo |

| | |
|---|---|
| Counsel for Plaintiff and Respondent, Heron Bay Homeowners Association: | Rogers Joseph O'Donnell, Robert C. Goodman, Ann Maria Blessing, and Nicholas T. Niiro; Law Office of A. Alan Berger, A. Alan Berger; Law Offices of Richard M. Pearl, Richard M. Pearl. |
| Counsel for Defendant, Respondent, and Appellant, City of San Leandro: | Myers Nave, Richard Delmendo PioRoda and Edward A. Grutzmacher. |
| Counsel for Real Parties in Interest and Appellants, Halus Power Systems and Louis A. Rigaud: | Miller Starr Regalia, Arthur F. Coon and Matthew C. Henderson. |